PEOPLE v MESIK (ON RECONSIDERATION)

Docket No. 282088. Submitted August 25, 2009, at Lansing. Decided September 10, 2009, at 9:10 a.m.

Eddie A. Mesik was convicted by a jury in the Iron Circuit Court, C. Joseph Schwedler, J., of first-degree felony murder and armed robbery. The armed robbery conviction was vacated and the defendant was sentenced to life in prison without parole. The defendant appealed. The Court of Appeals, WHITBECK, P.J., and DAVIS and GLEICHER, JJ., affirmed in a unpublished opinion per curiam, issued July 23, 2009 (Docket No. 282088). The defendant brought a motion for reconsideration, alleging that the Court of Appeals neglected to consider arguments that the defendant raised in a supplemental brief filed *in propria persona*. The Court of Appeals granted the motion and vacated its prior opinion.

On reconsideration, the Court of Appeals *held*:

1. The defendant was not deprived of his constitutional right to present a defense when the trial court ruled that the jury could consider the fact that a witness received a letter from a friend of the defendant while both the witness and the friend were in jail but the jury could not consider the contents of the letter. The defendant had ample opportunity through other testimony and evidence to challenge the witness's credibility and alleged bias against the defendant, and the statement in the letter that the defendant sought to focus on was little more than a cumulative detail with minimal probative value.

2. Although the prosecution engaged in highly improper and misleading questioning of the defendant during cross-examination, hearsay and double hearsay statements were not introduced into evidence during the process. The jury was properly instructed that the questions did not constitute evidence.

3. The trial court properly instructed the jury regarding the presumption of innocence.

4. The defendant was not denied the effective assistance of counsel. Counsel had no obligation to raise an objection that lacked merit, the defendant failed to establish a reasonable probability that the result would have been different if his counsel had

objected to the prosecution's mischaracterization of a witness's prior testimony, and any error in the prosecutor's description of the presumption of innocence was cured by the court's jury instructions.

5. Photographs of the victim's body were properly admitted as evidence regarding the element of intent.

6. The term "murder" has been settled in the law and in common parlance for centuries. No ambiguity exists regarding the meaning of the word "murder" or what conduct is likely to expose a person to criminal liability for murder. The first-degree murder statute is not unconstitutionally vague for failing to define the word "murder."

Affirmed.

CRIMINAL LAW — CONSTITUTIONAL LAW — WORDS AND PHRASES — MURDER.

A statute is sufficiently definite if its meaning can fairly be ascertained by reference to judicial interpretations, the common law, dictionaries, treatises, or the commonly accepted meanings of words; the term "murder" has been settled in the law and in common parlance for centuries; a reasonable person does not have to guess at the meaning of the word "murder" or what conduct is likely to expose the person to criminal liability therefor; the failure of the first-degree murder statute to define the word "murder" does not render the statute unconstitutionally vague (MCL 750.316).

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, *Melissa Powell-Weston*, Prosecuting Attorney, and *Mark G. Sands*, Assistant Attorney General, for the people.

State Appellate Defender (by *Michael L. Mittlestat*).

Eddie A Mesik, *in propria persona.*

ON RECONSIDERATION

Before: WHITBECK, P.J., and DAVIS and GLEICHER, JJ.

DAVIS, J. Following a jury trial, defendant was convicted of first-degree felony murder, MCL 750.316(1)(b), and armed robbery, MCL 750.529. The armed robbery

conviction was vacated, and defendant was sentenced to life in prison without parole. Defendant appeals as of right, and we affirm.[1]

On November 13, 2006, the body of Darrell McDonald was discovered in his apartment. McDonald's wrists had been bound with brown extension cords and tied to his ankles with black coaxial cable, and a sock had been stuffed in his mouth. McDonald had suffered a total of 32 stab wounds to his chest and abdomen, numerous cuts on his hands, and three incised wounds to the neck. McDonald had last been seen at the apartment of one of his friends where there were several other people, including defendant and his friend Bradley Starnes.

Defendant first argues that the trial court erred by excluding the contents of a letter from Starnes to witness Kyle Remer. Defense counsel asked Remer on cross-examination about the contents of a letter he received from Starnes while both were in jail. Defendant was specifically interested in a single statement in the letter, in which Starnes told Remer, "Hey, do whatever it takes to get yourself out of trouble." The prosecution objected, and the trial court ruled that the jury could consider the fact that Remer received the letter but not the contents. Defendant argues that the trial court's decision to exclude the contents of the letter deprived him of the right to present a defense. A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Whether

---

[1] Our original unpublished opinion per curiam in this case neglected to consider the arguments raised in defendant's supplemental brief on appeal that he filed *in propria persona*. This opinion corrects that omission. We have vacated our prior opinion in an unpublished order, entered September 10, 2009 (Docket No. 282088).

a defendant's right to present a defense was violated by the exclusion of evidence is a constitutional question that this Court reviews de novo. *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002).

We conclude that defendant was not deprived of his constitutional right to present a defense. He had ample opportunity through other testimony and evidence to challenge Remer's credibility and alleged bias against defendant. Defendant was able to show that Remer and Starnes shared a longstanding friendship, that they corresponded during Starnes's incarceration, and that Remer had a motive to protect Starnes. The single statement in the letter upon which defendant focuses was little more than a cumulative detail. Furthermore, its probative value was minimal in context: the next three sentences in the letter were, "I don't care if you have to go against me. Like I said, do whatever it takes. It's your life on the line." The trial court's exclusion of the contents of the letter did not in any way impair defendant's right to present a defense, and thus, even if we presume that the exclusion was erroneous, it was harmless. See *People v Shepherd*, 472 Mich 343, 347; 697 NW2d 144 (2005).

Defendant next argues that the prosecutor improperly introduced hearsay and double hearsay statements. Because this claim of error was not raised below, we review it for plain error affecting substantial rights. *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). Hearsay is inadmissible unless a recognized exception applies. MRE 802. Where multiple levels of hearsay are involved, all declarations made must not be hearsay or must fall within a recognized exception. MRE 805. After reviewing the portion of the record of which defendant complains, we find highly improper and misleading questioning by the prosecutor during the cross-examination of defendant, but no actual hearsay.

The first improper questioning was as follows:

*Q.* But Mr. Remer simply got it wrong when he said to this jury in this courtroom and at a preliminary exam at another hearing under oath that you said we killed him? He's mistaken about that?

*A.* I would say so, yes.

* * *

*Q.* He also talked about, Mr. Remer talked about, his private conversation with Mr. Starnes at the preliminary exam didn't he? Where he had a one-on-one conversation with Mr. Starnes that you were there for, correct?

*A.* I don't recall that.

*Q.* Do you remember the testimony [at the preliminary examination]? If he testified to it or are we making it up? The fact of what he said in court.

*A.* I don't remember that exactly.

*Q.* You don't remember the point where Kyle Remer testified in District Court saying I spoke with Bradley Starnes. He told me that they killed him. You don't remember when he testified to that at the preliminary exam and your attorney was objecting saying you can't use this against Mr. Mesik and there was a slight back and forth and the judge said no we'll only use this against Mr. Starnes. Do you remember that part?

*A.* I'm not sure.

*Q.* Mr. Remer is testifying against Mr. Starnes. And he testified against Mr. Starnes. Hasn't he?

*A.* I'm, yes, I guess so.

*Q.* He's testified that Mr. Starnes has actually taken credit for this killing saying we killed him. Put himself in jeopardy. This is what Mr. Remer has testified to, correct?

*A.* I'll say again I don't exactly recall.

*Q.* It's in the transcript. Will you take my word for it?

*A.* If it's in—

*Q.* Do you want to see it?

*A.* I guess I could see it, yes.

The transcript was never actually provided. In fact, during oral argument before this Court, the prosecutor conceded that Remer did not actually make several of the statements that the prosecutor had attributed to him, including "I spoke with Bradley Starnes. He told me that they killed him." The prosecutor's questioning was therefore misleading and, in our view, improper.[2]

However, there is no hearsay in any of the above questioning. Regarding the first question, Remer had already testified at defendant's trial, where he stated that defendant and Starnes told Remer "that they killed Red."[3] Remer had also already testified at trial that he had said at the preliminary examination that defendant told him that they killed McDonald. The prosecutor's first question was therefore no more than a summary of a prior witness's testimony at trial. Furthermore, the purpose of the question was apparently to challenge defendant's position that Remer was biased in favor of Starnes and against defendant, rather than to prove that, in fact, defendant had killed McDonald. Because the challenged statement was not offered for the truth of its contents, it is not hearsay. MRE 801(c). Statements against penal interest are also not hearsay. MRE 801(d); MRE 804(b).

The remaining challenged questions are also not hearsay because they are not even evidence. Had defendant confirmed, as a witness from the stand, any of the assertions by the prosecutor, those confirmations would

---

[2] However the mischaracterization of the testimony occurred, we note that at the time of the rulings complained of, the trial judge would not have known that the misrepresentations were inaccurate.

[3] "Red" was McDonald's nickname.

have constituted evidence. But defendant only denied any recollection of the matters about which he was asked. Although the prosecutor's questions were, as noted, misleading and improper, the prosecutor's questions are not evidence and therefore cannot be hearsay. The trial court properly instructed the jury that "evidence includes only the sworn testimony of witnesses and the exhibits admitted into evidence" and, among other things, "the lawyers' questions to witnesses are not evidence" and should be considered "only as they give meaning to the witnesses' answers." Because there is no evidence from which we can conclude that the jury was unable to follow its instructions, the trial court's instructions cured any prejudice. See *Callon, supra* at 330-331.

In sum, although the questioning was improper, it did not constitute hearsay, and defendant has not shown plain error affecting substantial rights.

Defendant next argues that he is entitled to reversal because of prosecutorial misconduct. We disagree. We also review this unpreserved claim for plain error affecting substantial rights. *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004). The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Defendant first argues that the prosecutor's introduction of hearsay and double hearsay statements, discussed above, constituted prosecutorial misconduct. As noted, however, the questioning was not hearsay, and the jury was properly instructed to disregard the attorneys' questions as constituting evidence.

Defendant also argues that the prosecutor engaged in misconduct because he misrepresented Remer's preliminary examination testimony. Specifically, he chal-

lenges the prosecutor's representation to defendant on cross-examination that Remer had testified regarding a private conversation with Starnes in which Starnes admitted that he and defendant killed McDonald. Defendant is correct that the prosecutor did ask him about this alleged testimony, and he is also correct that Remer did not testify at the preliminary examination regarding such a conversation. However, defendant consistently responded that he did not recall that Remer had so testified. Under these circumstances, defendant cannot establish the requisite level of prejudice under the plain error rule.

Defendant also argues that the misrepresentation of Starnes's testimony was reiterated during the prosecutor's closing arguments. However, the passage of the closing arguments cited by defendant includes references to what Remer stated that defendant admitted, not Starnes.

Finally, defendant argues that the prosecutor's statements during closing arguments related to the presumption of innocence denied him a fair trial. Regardless of how the prosecutor described the burden of proof, the trial court properly instructed the jury regarding the presumption of innocence and clearly stated that the jury must take the law as given by the court. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

Defendant next argues that he is entitled to a new trial because he was denied effective assistance of counsel. We disagree. Our review of this unpreserved claim of ineffective assistance of counsel is limited to mistakes apparent on the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). In order to

prevail on a claim of ineffective assistance of counsel, defendant must show: (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different; and (3) the resultant proceedings were fundamentally unfair or unreliable. *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001). Defendant must also overcome a strong presumption that counsel's actions were the product of sound trial strategy. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Defendant first argues that counsel was ineffective for failing to raise a hearsay objection to the prosecutor's reference to Remer's preliminary examination testimony during cross-examination of defendant. As discussed above, the cited testimony was properly admitted. Defense counsel has no obligation to raise a meritless motion or make a meritless objection. *People v Kulpinski*, 243 Mich App 8, 27; 620 NW2d 537 (2000). Defendant also argues that counsel was ineffective for failing to object to the prosecutor's mischaracterization of Remer's preliminary examination testimony during closing arguments. As noted earlier, while the questioning did mischaracterize the prior testimony, defendant's denials remained unchallenged by extrinsic evidence. Therefore, this argument fails because defendant has not established that there is a reasonable probability that the result of the proceedings would have been different had his counsel objected. *Rodgers, supra* at 714. Finally, defendant argues that he was denied effective assistance of counsel for failure to object to the prosecutor's description of the presumption of innocence. Again, any error was effectively cured by the court's jury charge.

Next, we reject defendant's argument that the trial court erred by allowing the introduction of photographs of the victim's body at the crime scene. A trial court's decision to admit photographs into evidence is reviewed for an abuse of discretion. *Aldrich, supra* at 113. Evidence is unfairly prejudicial if it presents a danger that the jury would give undue or preemptive weight to marginally probative evidence. *People v Ortiz*, 249 Mich App 297, 306; 642 NW2d 417 (2002). While gruesome photographs should not be admitted solely to garner sympathy from the jury, a photograph that is admissible for some other purpose is not rendered inadmissible because of its gruesome details. *People v Ho*, 231 Mich App 178, 188; 585 NW2d 357 (1998).

Defendant argues that the photographs were not necessary because the manner of death was not disputed at trial and instead the main dispute involved the number and identity of the murderers. However, the prosecution is required to prove each element of a charged offense regardless of whether the defendant specifically disputes or offers to stipulate any of the elements. *People v Crawford*, 458 Mich 376, 389; 582 NW2d 785 (1998). Therefore, while defendant did not contest McDonald's cause of death, the prosecution was not relieved of its duty to prove all the elements of first-degree murder, including intent. The photographs were helpful to meet this burden.

Finally, defendant argues *in propria persona* that MCL 750.316, Michigan's first-degree murder statute, is unconstitutional because the term "murder" is not defined by statute. He argues that the statute fails to advise defendants of the nature of the charge against them, is impermissibly vague, and is therefore void as being facially unconstitutional. While it is true that the word "murder" is not defined by statute, and in Michi-

gan never *has* been defined by statute, see *People v Aaron*, 409 Mich 672; 299 NW2d 304 (1980), no such definition is required. We find nothing vague about what conduct is prohibited by the statute.

The constitution requires criminal statutes to give "fair warning" to defendants of what conduct will constitute a crime without resorting to speculation, and they must provide adequate guidance to the trier of fact without requiring a court to "interpret" any ambiguities. *People v Dempster*, 396 Mich 700, 714-715; 242 NW2d 381 (1976). Thus, a person of reasonable intelligence may not be required to guess at or meaningfully differ in opinion regarding what conduct is proscribed, but a "statute is sufficiently definite if its meaning can fairly be ascertained by reference to judicial interpretations, the common law, dictionaries, treatises, or the commonly accepted meanings of words." *People v Noble*, 238 Mich App 647, 651-652; 608 NW2d 123 (1999).

According to the *Random House Webster's College Dictionary* (2001), "murder" is "the unlawful killing of a person, esp. when done with deliberation or premeditation or occurring during the commission of another serious crime." According to caselaw more than 150 years old, "[m]urder is where a person of sound memory and discretion unlawfully kills any reasonable creature in being, in the peace of the state, with malice prepense or aforethought, either express or implied. This, the common law definition, is still retained in our statute." *People v Potter*, 5 Mich 1, 6 (1858). On September 6, 1788, before Michigan was even a separate territory, an act of the territorial government of the Northwest Territory did provide that "[i]f any person or persons shall with malice aforethought, kill or slay another person, he, she, or they so offending, shall be deemed guilty of murder . . . ." Samuel Johnson's contemporary

*A Dictionary of the English Language,* Vol II (6th ed, 1785), defined "murder," in relevant part, as "[t]he act of killing a man unlawfully; the act of killing criminally." In short, the term has been settled in the law and in common parlance for centuries.

Of course, not all killing constitutes murder: "malice aforethought is the 'grand criterion' which elevates a homicide, which may be innocent or criminal, to murder." *Aaron, supra* at 714 (footnote and citation omitted). But the fact that there are circumstances under which a killing will not be murder, such as accidents or in self-defense, is also well established. See, e.g., *Errington and Others' Case,* 2 Lewin, Crown Cas 217, 219-220; 168 Eng Rep 1133, 1134 (Newcastle Assizes, 1838),[4] often studied in law school. This is well known in everyday life, as well. Exactly what constitutes "malice aforethought" is a term of art, but again, it is defined both in caselaw and in the dictionary.

---

[4] The defendants in that case were charged with murder.

It appeared, that the deceased, being in liquor, had gone at night into a glass-house, and laid himself down upon a chest: and that while he was there asleep the prisoners covered and surrounded him with straw, and threw a shovel of hot cinders upon his belly; the consequence of which was that the straw ignited, and he was burnt to death.

There was no evidence in the case of express malice; but the conduct of the prisoners indicated an entire recklessness of consequences, hardly consistent with anything short of design.

Patteson, J., cited from the text books the law applicable to the case, and pointed the attention of the jury to the distinctions which characterise murder and manslaughter. He then adverted to the fact of there being no evidence of express malice; but told them, that if they believed the prisoners really intended to do any serious injury to the deceased, although not to kill him, it was murder; but if they believed their intention to have been only to frighten him in sport, it was manslaughter.

The jury took a merciful view of the case, and returned a verdict of manslaughter only.

We recognize that there are circumstances under which a statute may be rendered unconstitutional because of the absence of a definition. Without purporting to render any sort of advisory opinion, we note by way of example that a statute proscribing "annoyance" may well be impermissibly vague without further guidance, simply because of the known variability in what reasonable individuals personally consider "annoying." But no hint of any such ambiguity exists here. Indeed, we find incredible the contention that any reasonable person would have to guess at the meaning of the word "murder" or what conduct is likely to expose him or her to criminal liability therefor.

Affirmed.