# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
October 30, 2014

Plaintiff-Appellee,

v

No.  311753
Wayne Circuit Court
LC No.  11-005770-FC

MATILDA JANE BROWN GARDNER,

Defendant-Appellant.

Before:  GLEICHER, P.J., and SERVITTO and RONAYNE KRAUSE, JJ.

PER CURIAM.

A jury convicted defendant of first-degree felony murder, MCL 750.316(1)(b), torture, MCL 750.85, and first-degree child abuse, MCL 750.136b(2),[1] in connection with the death of her four-year-old nephew, RB.  The prosecutor presented sufficient admissible evidence to support defendant's convictions and did not violate defendant's constitutional rights by removing witnesses from its witness list at trial.  We affirm.

## I. BACKGROUND

In October 2009, defendant and her husband, Randy Gardner, took custody of her nephews—then two-year-old RB and his older brother.  Defendant and Gardner also had four biological children.  Until RB's death in May 2011, Gardner subjected the toddler to brutal beatings and often restrained him with handcuffs.  Defendant permitted the physical abuse to continue and withheld food and water from the child for extended periods.  At the age of four, RB died of starvation and neglect, with physical abuse as a contributing factor.  Gardner pleaded guilty to second-degree murder, torture, and first-degree child abuse in connection with RB's death before defendant's trial.

---

[1] Defendant was also charged with an alternative count of first-degree premeditated murder, MCL 750.316(1)(a).  The jury found defendant guilty of the lesser offense of second-degree murder, MCL 750.317, with respect to that charge.  At sentencing, the trial court granted the prosecutor's motion to vacate that conviction.

## II. ADMISSION OF PHOTOGRAPHIC EVIDENCE

Defendant challenges the trial court's admission of several "autopsy" photographs at her trial, claiming that these photographs were overly prejudicial. First and foremost, we note that defendant mischaracterizes the nature of these photographs; they were taken prior to RB's autopsy to document the nature of his injuries and the small size of his body due to malnourishment. They were not "autopsy" photographs. Second, defendant erroneously concludes that it was unnecessary to establish the nature and extent of RB's injuries based on the incorrect assumption that she was convicted solely on an aiding and abetting theory. Defendant directly committed first-degree child abuse, and therefore first-degree felony murder, by withholding food and water from a young child otherwise unable to secure these needs for himself.

We further note that defendant has been unable to present the challenged photographs on appeal, due to no fault of her own. Nevertheless, we are satisfied that the record testimony and arguments describing the nature and contents of the photographs, and their purpose, is sufficient to review the admissibility of this evidence. See *People v Drake*, 64 Mich App 671, 679; 236 NW2d 537 (1975) (holding that a defendant's inability to secure the challenged transcript for the appellate court does not automatically entitle the defendant to a new trial); see also *People v Wilson (On Rehearing)*, 96 Mich App 792, 797; 293 NW2d 710 (1980) (finding that "not every gap in a record on appeal requires reversal of a conviction").

We review for an abuse of discretion a trial court's decision to admit photographic evidence. *People v Gayheart*, 285 Mich App 202, 227; 776 NW2d 330 (2009). A trial court abuses its discretion when it chooses an outcome that "falls outside of the range of reasonable and principled outcomes." *People v Duncan*, 494 Mich 713, 723; 835 NW2d 399 (2013).

> Photographic evidence is generally admissible as long as it is relevant, MRE 401, and not unduly prejudicial, MRE 403. [*People v Unger*, 278 Mich App 210, 257; 749 NW2d 272 (2008).] "'Photographs may . . . be used to corroborate a witness' testimony,' and '[g]ruesomeness alone need not cause exclusion.'" *Id.*, quoting *People v Mills*, 450 Mich 61, 76; 537 NW2d 909 (1995). [*Gayheart*, 285 Mich App at 227.]

Evidence is relevant under MRE 401 if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Evidence is unfairly prejudicial where there exists "a danger that the jury would give undue or preemptive weight to marginally probative evidence." *People v Mesik (On Reconsideration)*, 285 Mich App 535, 544; 775 NW2d 857 (2009).

According to the medical examiner's testimony, the 11 photographs depicted the extreme state of RB's malnutrition, as well as various scars, ulcerations, and other injuries at various stages of healing. We reject defendant's argument that there was no evidentiary need for the photographs simply because the medical examiner could describe his findings without the aid of

the photographs. "The jury is not required to depend solely on the testimony of experts, but is entitled to view the severity and vastness of the injuries for itself." *Gayheart*, 285 Mich App at 227. And although the photographs do not reveal the identity of the assailant, the prosecutor was still required to prove each element of each charged offense. *Mesik*, 285 Mich App at 544. The nature of RB's various injuries and his condition were relevant in this case to establish that RB was starved, abused, and tortured. We are satisfied that the probative value of the photographs was not substantially outweighed by the danger of unfair prejudice. MRE 403.

## III. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that the evidence at trial was insufficient to support any of her convictions.[2] When considering a challenge to the sufficiency of the evidence, an appellate court "reviews the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006). The prosecution need not negate every theory consistent with innocence, but must prove its own "theory beyond a reasonable doubt in the face of whatever contradictory evidence the defendant may provide." *People v Kissner*, 292 Mich App 526, 534; 808 NW2d 522 (2011) (quotation marks and citation omitted). Questions of credibility are for the jury to decide. *Id.*

As noted, defendant approaches this appeal with the incorrect assumption that she was convicted only as an aider and abettor to Gardner's physical abuse. The prosecutor's theory at trial was that defendant committed first-degree child abuse by intentionally not feeding the victim. "A person is guilty of child abuse in the first degree if the person knowingly or intentionally causes serious physical or serious mental harm to a child." MCL 750.136b(2). "A fact-finder may infer a defendant's intent from all of the facts and circumstances." *Kissner*, 292 Mich App at 534. To be convicted of first-degree child abuse, the defendant must have both an intent to commit the act and an intent to cause serious physical or mental harm to the child or know that the act would cause serious mental or physical harm. *People v Maynor*, 470 Mich 289, 295; 683 NW2d 565 (2004); see also *People v Portellos*, 298 Mich App 431, 444; 827 NW2d 725 (2012) ("A defendant must not only act, but must know that the act will cause serious physical harm."). "Serious physical harm" is defined as:

> [A]ny physical injury to a child that seriously impairs the child's health or physical well-being, including, but not limited to, brain damage, a skull or bone fracture, subdural hemorrhage or hematoma, dislocation, sprain, internal injury, poisoning, burn or scald, or severe cut. [MCL 750.136b(1)(f).]

The prosecutor's theory in this case was that defendant knowingly and intentionally caused serious physical harm to the victim by intentionally failing to provide food and

---

[2] Defendant challenges the sufficiency of the evidence to support a first-degree premeditated or second-degree murder charge. Because the jury acquitted defendant of first-degree premeditated murder and the court vacated her second-degree murder conviction, we need not consider those challenges.

nourishment necessary for the victim's well being. An "[o]mission" is defined in MCL 750.136b(1)(c) as "a willful failure to provide food, clothing, or shelter necessary for a child's welfare or willful abandonment of a child." An "omission" may form the basis for a conviction of first-degree child abuse. See *Portellos*, 298 Mich App at 444-445 (finding that a parent's failure to summon medical assistance could support a conviction of first-degree child abuse).

The parties stipulated that defendant received custody of the victim on October 21, 2009. Medical records indicated that RB weighed 33 pounds on April 24, 2010. According to defendant's sister, RB and his brother stayed with her off and on between December 2009 and May 2010, and she fed the children during this period. Defendant's sister testified that RB appeared to be "getting real small" at some point before his death, and that defendant told her that RB would drink water from the toilet and eat dog food. RB's brother testified that defendant fed him and his four cousins but would not give RB the same food. After RB's death, defendant told a Child Protective Services (CPS) worker that she had used a false name to contact a hospital two or three days before RB's death to report that the child was experiencing flu-like symptoms. Defendant admitted that she did not follow through with the nurse's instruction to feed RB ice chips. The medical examiner testified that RB lost weight between his hospital visit on April 24, 2010, and his death on May 8, 2011, and that his malnutrition was so severe that it could not have resulted from a short flu beginning two days before his death. Moreover, evidence established that the day before RB's death, defendant went to a beauty parlor and shopping with her sister. The next day, defendant found RB lying unconscious on the kitchen floor and finally took the child to a hospital where he died.

The evidence, viewed in a light most favorable to the prosecution, indicates that defendant did not feed four-year-old RB while he was in her custody despite having appropriate food in the home, and that RB resorted to finding dog food or toilet water for nourishment when he could. The physical consequences of defendant's failure to feed RB and his severe malnutrition would have been apparent from his weight loss and small appearance. Defendant ignored RB's rapidly deteriorating condition and went on a pampering day instead of securing medical assistance. The evidence was sufficient to enable a reasonable jury to find beyond a reasonable doubt that defendant acted intentionally, and knew or intended that serious physical harm would be caused by this omission. Therefore, the evidence was sufficient to establish first-degree child abuse.

Defendant was convicted of torture under an aiding and abetting theory (i.e., that she aided and abetted Gardner's torture of young RB). A conviction under an aiding and abetting theory requires proof of the following elements:

> (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement. [*Robinson*, 475 Mich at 6 (quotation marks and citations omitted).]

The crime of torture requires proof that "[a] person who, with intent to cause cruel or extreme physical or mental pain and suffering, inflicts great bodily injury or severe mental pain

-4-

or suffering upon another person within his or her custody or physical control. . . ." MCL 750.85(1). "Custody or physical control" is defined as "the forcible restriction of a person's movements or forcible confinement of the person so as to interfere with that person's liberty, without that person's consent or without lawful authority." MCL 750.85(2)(b). "Great bodily injury" includes "internal injury, poisoning, serious burns or scalding, severe cuts, or multiple puncture wounds." MCL 750.85(2)(c)(*ii*). "Severe mental pain or suffering" includes "a mental injury that results in a substantial alteration of mental functioning that is manifested in a visibly demonstrable manner caused by or resulting from . . . [t]he intentional infliction or threatened infliction of great bodily injury." MCL 750.85(2)(d)(*i*).

Defendant does not dispute that Gardner tortured the victim. Rather, defendant argues that the prosecutor's aiding and abetting theory was based on the faulty premise that she approved of Gardner's actions, with the requisite intent to cause cruel or extreme physical or mental pain and suffering. Defendant attributes her failure to interfere with or report Gardner's criminal conduct to her alleged fear of Gardner.[3]

"The phrase 'aids and abets' is used to describe any type of assistance given to the perpetrator of a crime by words or deeds that are intended to encourage, support, or incite the commission of that crime." *People v Moore*, 470 Mich 56, 63; 679 NW2d 41 (2004). "An aider and abettor's state of mind may be inferred from all the facts and circumstances." *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). Relevant factors include the closeness of the relationship between the defendant and the principal, the defendant's role in planning or executing the crime, and whether the defendant flees after the crime. *Id.* at 757-758.

Defendant, as RB's guardian, had the authority to discipline RB. See MCL 750.136b(9) (child abuse statute does not prohibit reasonable discipline, including the use of reasonable force). Defendant could also authorize Gardner's discipline of RB. *Id.* But viewed in a light most favorable to the prosecution, the evidence established that defendant did not place any constraints on or stop Gardner's repeated use of unreasonable force against the child. Defendant told her sister that RB's behavior was "so bad," and told a CPS worker that she allowed Garnder to discipline RB and chose not to intervene. RB's brother testified that defendant was home when Gardner whipped RB with an extension cord and did not stop Gardner.

The evidence permitted the jury to reject defendant's argument that her actions or omissions were attributed only to fear of Gardner. Although there was evidence of domestic violence in the home, it did not indicate that Gardner was the sole perpetrator. Both defendant's sister and RB's father testified that defendant physically assaulted Gardner as well. Defendant's sister even testified that defendant was the aggressor in the relationship.

Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable a jury to find beyond a reasonable doubt that defendant aided and abetted Gardner's torture by authorizing him to physically discipline RB, with knowledge that Gardner intended to cause

---

[3] We note that defendant's theory that her fear of Gardner excused any criminal conduct was presented to the jury and the court instructed the jury on the defense of duress.

cruel or extreme physical or mental pain and suffering, and was actually inflicting great bodily injury. Moreover, defendant's own conduct of intentionally failing to provide food and water to the extent that RB became severely malnourished and eventually died supports the jury's finding that defendant shared the same intent to cause cruel or extreme physical or mental pain and suffering.

We also reject defendant's argument that the evidence was insufficient to support her conviction of first-degree felony murder. The elements of felony murder are:

> (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in [the statute, including armed robbery]. [*Carines*, 460 Mich at 758-759 (quotation marks and citation omitted).]

Both first-degree child abuse and torture are enumerated felonies in MCL 750.316(1)(b). The jury was permitted to consider both of these offenses as underlying felonies supporting a felony murder conviction. Further, the evidence that defendant acted with the requisite intent to support convictions for both first-degree child abuse and torture is also sufficient to establish the requisite malice to sustain the felony-murder conviction.

## IV. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises three additional issues in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4.

Defendant frames her first issue as a challenge to the prosecutor's elicitation of testimony regarding objects not introduced into evidence at trial. Because defendant did not object to the challenged testimony, this issue is unpreserved and defendant has the burden of showing plain error affecting her substantial rights. *Carines*, 460 Mich at 763. Defendant contends that the evidence technicians proffered by the prosecution improperly testified about various items collected from defendant's home that were not actually placed into evidence. However, MRE 602 permits a witness to testify about matters within his or her personal knowledge. Because the collection of the subject items was within the personal knowledge of the testifying witnesses, there was no plain error. MRE 602. And defendant does not describe how she was prejudiced by the failure to produce these items in the courtroom.

Defendant next argues that the prosecution deprived her of defense witnesses by listing her four children on its witness list, but then declining to call them at trial. The record discloses that defense counsel affirmatively agreed to waive these witnesses' presence at trial. After the prosecutor announced her intent not to call the remaining witnesses, defense counsel stated, "We have no objection to all of the remaining witnesses being waived." Thus, any error related to the prosecutor's failure to produce the remaining witnesses has been waived and extinguished, leaving nothing for our review. *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000).

Defendant finally claims that the prosecutor falsely told defense counsel that the video recordings of her children's and RB's brother's forensic interviews were incriminating. Defendant contends that the prosecutor should have introduced the recordings at trial, or her counsel should have done so. The record does not factually support defendant's suggestion that the prosecution suppressed, lost, or destroyed this evidence. Rather, the record clearly demonstrates that defense counsel viewed the recorded interviews and opposed their admission at trial. Accordingly, those interviews must not have been exculpatory as claimed by defendant. Although the prosecutor originally planned to offer into evidence portions of the children's interviews for impeachment purposes or as a recorded recollection under MRE 803(5), the prosecutor ultimately did not use this evidence at trial. Because defense counsel viewed the interviews and expressly opposed their presentation at trial, defendant waived any claim of error. *Id.* To hold otherwise would allow defendant to harbor error as an appellate parachute. *Id.* at 214.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Deborah A. Servitto
/s/ Amy Ronayne Krause