# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KEVIN MICHAEL SEARS,

        Defendant-Appellant.

UNPUBLISHED
June 16, 2015

No. 320458
Macomb Circuit Court
LC No. 2013-000402-FC

Before: JANSEN, P.J., and SAWYER and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of conspiracy to commit first-degree premeditated murder, MCL 750.157a and MCL 750.316(1), and solicitation of murder, MCL 750.157b(2). Defendant was sentenced to life imprisonment for the conspiracy to commit first-degree murder conviction and 12 to 25 years' imprisonment for the solicitation of murder conviction. We affirm.

Defendant first argues that there was insufficient evidence to support his convictions of conspiracy to commit murder and solicitation of murder. We disagree.

"A challenge to the sufficiency of the evidence in a jury trial is reviewed de novo, viewing the evidence in the light most favorable to the prosecution, to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014). This Court "must draw all reasonable inferences and examine credibility issues in support of the jury verdict" and "must not interfere with the jury's role as the sole judge of the facts." *People v Malone*, 287 Mich App 648, 654; 792 NW2d 7 (2010). "[T]he elements of an offense may be established on the basis of circumstantial evidence and reasonable inferences from the evidence[.]" *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013).

A conspiracy is "a partnership in criminal purposes" by which "two or more individuals must have voluntarily agreed to effectuate the commission of a criminal offense." *People v Justice*, 454 Mich 334, 345; 562 NW2d 652 (1997). "Conspiracy is a specific-intent crime, because it requires both the intent to combine with others and the intent to accomplish the illegal objective." *People v Mass*, 464 Mich 615, 629; 628 NW2d 540 (2001).

-1-

Identifying the objectives and even the participants of an unlawful agreement is often difficult because of the clandestine nature of criminal conspiracies. Thus, direct proof of the conspiracy is not essential; instead, proof may be derived from the circumstances, acts, and conduct of the parties. Inferences may be made because such evidence sheds light on the coconspirators' intentions. [*Justice*, 454 Mich at 347.]

"A conviction of first-degree premeditated murder requires evidence that the defendant intentionally killed the victim and the act of killing was premeditated and deliberate." *People v Jackson*, 292 Mich App 583, 588; 808 NW2d 541 (2011) (citation and internal quotation marks omitted). "Solicitation to commit murder occurs when (1) the solicitor purposely seeks to have someone killed and (2) tries to engage someone to do the killing." *People v Crawford*, 232 Mich App 608, 616; 591 NW2d 669 (1998).

In this case, the testimony of defendant's girlfriend and co-conspirator, Mallorie Wilson-Strat, standing alone, was sufficient to support defendant's convictions. The accounts of a single eyewitness can establish a defendant's guilt beyond a reasonable doubt. See *People v Newby*, 66 Mich App 400, 405; 239 NW2d 387 (1976). According to Wilson-Strat, defendant said he wanted his wife, Jessica Scaife, killed before their divorce was final. Although defendant expressed some desire to kill Scaife on his own, Wilson-Strat discouraged that, fearing that defendant would be discovered and go to prison. Wilson-Strat testified that defendant and his sister, Christina Sears, both had conversations with her about wanting Scaife killed. Wilson-Strat testified regarding several text messages she received from defendant, which she stated referred to the conspiracy. In the messages, defendant promised to marry her if she "did [her] job" and that she could be a stay-at-home mother "if it works." Wilson-Strat also identified code words used in text messages between her and defendant when discussing the conspiracy. Wilson-Strat first hired David Clark to kill Scaife, and defendant financially contributed. Defendant instructed Clark, through Wilson-Strat, on how to enter the marital home through an open basement window when Clark and Clark's friend went, armed with knives, to kill Scaife. However, Clark was unsuccessful, so Wilson-Strat then hired John Walker, who she later learned was undercover police detective John Glass, to murder Scaife. She paid Glass to kill Scaife, and defendant financially contributed. Based on these facts, testified to by Wilson-Strat, there was sufficient evidence presented to the jury to support defendant's convictions. Contrary to defendant's claim on appeal, inferences and innuendo were not the only support for defendant's convictions and, in any event, direct proof of the conspiracy and solicitation was not necessary. *Justice*, 454 Mich at 347; *Dunigan*, 299 Mich App at 582.

Defendant next argues that the trial court's practice of identifying jurors by numbers rather than by their names violated his right to due process. We disagree. This Court generally reviews for an abuse of discretion a trial court's decision to refer to jurors by number rather than name. *People v Williams*, 241 Mich App 519, 522; 616 NW2d 710 (2000). However, because defendant did not object in the trial court, his claim is unpreserved. We review unpreserved constitutional challenges for plain error affecting substantial rights. *People v Vandenberg*, 307 Mich App 57, 61; 859 NW2d 229 (2014).

"An 'anonymous jury' is one in which certain information is withheld from the parties, presumably for the safety of the jurors or to prevent harassment by the public." *Williams*, 241

Mich App at 522-523. While "the use of an 'anonymous jury' may promote the safety of prospective jurors," it is at the "potential expense" of "the defendant's interest in being able to conduct a meaningful examination of the jury" and "the defendant's interest in maintaining the presumption of innocence." *Id*. at 522–523. "In order to successfully challenge the use of an 'anonymous jury,' the record must reflect that the parties have had information withheld from them, thus preventing meaningful voir dire, or that the presumption of innocence has been compromised." *Id*. at 523.

Here, the record does not support defendant's assertions that the trial court empaneled an anonymous jury or that his due process rights were violated. While the jurors were referred to by numbers, there was nothing in the record to suggest that defendant was denied access to the juror's information[1] or that he was prevented from conducting meaningful voir dire. See *id*. Defendant did not argue in the trial court or on appeal that he was denied these opportunities. Rather, the record demonstrates that, during voir dire, the trial court, prosecutor, and defense counsel asked extensive questions about the jurors' backgrounds and attitudes. In addition, there is nothing in the record to indicate that the use of numbers to identify jurors undermined the presumption of innocence. *Id*. at 524. Rather, the trial court instructed the jury that defendant enjoyed the presumption of innocence, and jurors are presumed to have followed their instructions. *People v Mesik (On Reconsideration)*, 285 Mich App 535, 542; 775 NW2d 857 (2009) (citation omitted). Accordingly, defendant has not shown plain error affecting his substantial rights. *Vandenberg*, 307 Mich App at 61.

Defendant next argues that the trial court erred when it refused to allow defendant to impeach Wilson-Strat with evidence of a prior inconsistent statement. Defendant claims this violated his constitutional right to present a defense, confront the witnesses against him, and a fair trial. We disagree. This Court reviews a trial court's decision to admit evidence for an abuse of discretion. *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). An abuse of discretion occurs when trial court's decision is outside the range of principled outcomes. *People v Duenaz*, 306 Mich App 85, 90; 854 NW2d 531 (2014).

At trial, defendant's trial counsel questioned Wilson-Strat regarding Latoyia Brooks, who was a fellow inmate and food-service coworker of Wilson-Strat. Defendant asked Wilson-Strat if she had discussed the case with Brooks, and Wilson-Strat replied, "Not that I recall." Outside the presence of the jury, defense counsel elicited testimony from Brooks that while in the prison shower together, Wilson-Strat told Brooks that she had tried to have her boyfriend's wife murdered. Brooks further testified that Wilson-Strat said she was going to testify against defendant because "she was trying to take him down with her because he didn't love her like she loved him." The trial court excluded Brooks' testimony from trial. On appeal, defendant asserts that the trial court should have permitted defendant to impeach Wilson-Strat with Brooks' testimony.

---

[1] MCR 2.510(C)(1)(c) requires parties of actions in which a juror is called to serve to be allowed to examine the juror's questionnaire.

Any party may attack the credibility of a witness. MRE 607. MRE 613 provides that, under certain circumstances, a witness may be examined regarding a prior inconsistent statement for impeachment purposes:

> (a) Examining witness concerning prior statement. In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request it shall be shown or disclosed to opposing counsel and the witness.

> (b) Extrinsic evidence of prior inconsistent statement of witness. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party opponent as defined in Rule 801(d)(2).

Pursuant to MRE 613, to impeach a witness a party must first lay a proper foundation "by questioning the witness concerning the time and place of the statement and the person to whom it was allegedly made." *People v Rodriguez*, 251 Mich App 10, 34-35; 650 NW2d 96 (2002).

Defendant did not lay the proper foundation for the admission of the Wilson-Strat's alleged inconsistent statement. As the trial court found, defense counsel did not directly ask Wilson-Strat whether she ever told Brooks her motivation for testifying. Rather, defense counsel only generally asked whether Wilson-Strat told Brooks about her "situation." Defense counsel was also misleading about the timing of the alleged statement—asking Wilson-Strat if she talked to Brooks during a break when they were working in a food line, but then eliciting testimony from Brooks about a statement made while they were in the prison showers. Because Wilson-Strat did not have an opportunity to admit, deny, or explain her alleged statement to Brooks, it was not outside the range of principled outcomes to exclude the statement. *Duenaz*, 306 Mich App at 90.

Defendant argues that the trial court could have allowed defense counsel to question Brooks about Wilson-Strat's statement and later recall Wilson-Strat to give her the opportunity to admit, deny, or explain it. Defendant is correct that MRE 613(b) contains no particular sequence or timing required for the foundational order. *People v Parker*, 230 Mich App 677, 683; 584 NW2d 753 (1998). But this Court has explained that "the traditional method of confronting a witness with his inconsistent statement prior to its introduction into evidence [is] the preferred method of proceeding," and it prevents a prior statement from being "incorrectly interpreted by a jury as substantive evidence." *Id*. (citation omitted). In *Parker*, this Court concluded that where the defendant knew about the declarant's prior inconsistent statement before the witness testified, it was not an abuse of discretion for the trial court to rule that the traditional sequence be followed. *Id*. at 683-684. Here, defense counsel never requested an opportunity to recall Wilson-Strat to establish a proper foundation after Brooks testified about the alleged prior statement. But even if defense counsel had made such a request, the trial court would not have erred by ruling that the traditional method should be followed to prevent any misunderstanding about the purpose of the evidence—for impeachment, not substance. See *id*.

Affirmed.

/s/ Kathleen Jansen
/s/ David H. Sawyer
/s/ Karen M. Fort Hood