# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 18, 2015

Plaintiff-Appellee,

v

No. 321246
St. Clair Circuit Court
LC No. 13-002931-FC

CORTEZ DOMINIQUE KIDD,

Defendant-Appellant.

Before: JANSEN, P.J., and SAWYER and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial conviction of one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (victim under 13 years of age), for which he was sentenced to 5 to 15 years in prison. We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

I

Defendant was originally charged with one count of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a), and one count of CSC-II for allegedly engaging in sexual penetration and contact with the 12-year-old victim on Thanksgiving Day 2012. The jury convicted defendant of CSC-II but deadlocked with respect to the charge of CSC-I. Following trial, defendant agreed to plead no contest to a charge of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(a) (victim at least 13 but under 16 years of age) in exchange for the prosecutor's agreement not to retry him on the charge of CSC-I.

The trial court determined that defendant's no-contest plea was knowing, voluntary, and intelligent,[1] accepted defendant's plea, and entered a judgment of conviction on the charge of CSC-III. The court then referred both of defendant's convictions to the probation department for the preparation of a Presentence Investigation Report (PSIR).

---

[1] In accordance with MCR 6.302(D)(2), the trial court did not directly question defendant about his participation in the crime. Instead, the court relied on the trial testimony that it had already heard to establish a factual basis for defendant's plea.

CSC-II and CSC-III are in the same offense category—crimes against a person. MCL 777.16y. Therefore, the same offense variables (OVs) and prior record variables (PRVs) apply to both felonies. MCL 777.21(1)(a); MCL 777.21(1)(b); MCL 777.22(1). The probation department prepared a PSIR and scored the statutory sentencing guidelines for CSC-III, the more serious conviction.[2] The probation department calculated a total OV score of 30 and a total PRV score of 40. At the sentencing hearing, however, all parties agreed that defendant's total PRV score should be corrected and lowered to 30. Defendant does not challenge the corrected scoring of the sentencing guidelines on appeal.

Defendant's total OV score of 30 and total PRV score of 30 placed him in cell D-III on the sentencing grid for Class B felonies,[3] with a recommended minimum sentence range of 57 to 95 months. MCL 777.63. The trial court sentenced defendant to concurrent prison terms of 7 years (84 months) to 15 years for the CSC-III conviction, and 5 years (60 months) to 15 years for the CSC-II conviction.

II

We reject defendant's claims of prosecutorial misconduct and related claim of ineffective assistance of trial counsel.

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *People v Mesik (On Reconsideration)*, 285 Mich App 535, 541; 775 NW2d 857 (2009). "[A]llegations of prosecutorial misconduct are considered on a case-by-case basis, and the reviewing court must consider the prosecutor's remarks in context." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). We review unpreserved claims of prosecutorial misconduct for outcome-determinative, plain error. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008); see also *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Because no *Ginther*[4] hearing was held, our review of defendant's claim of ineffective assistance of counsel is limited to mistakes apparent on the record. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

Defendant first argues that the prosecutor committed misconduct when she referred to a portion of defense counsel's closing argument "as a 'red herring.' " We disagree.

---

[2] When concurrent sentences are to be imposed for multiple felony convictions in the same offense category, the probation department is only required to include in the PSIR the recommended minimum sentence range for the felony "having the highest crime class." MCL 771.14(2)(e). Both CSC-II and CSC-III carry a statutory maximum sentence of 15 years in prison. MCL 750.520c(2)(a); MCL 750.520d(2). However, whereas CSC-III (which involves sexual penetration) is a Class B felony, CSC-II (which involves sexual contact without penetration) is a Class C felony. MCL 777.16y.

[3] As noted, CSC-III, the more serious of defendant's two convictions, is a Class B felony. MCL 777.16y.

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Michigan State Police forensic scientist Jennifer Summers testified that there was no seminal fluid present on the vaginal and cervical swabs collected from the victim. Summers also testified that no sperm cells were present on the microscope slides prepared in this case. Michigan State Police forensic scientist Catherine Maggert testified that she had not discovered any DNA consistent with defendant's profile on the vaginal and vulvar swabs collected from the victim. Maggert also testified that she had not located any skin cells containing DNA consistent with defendant's profile.

In his closing argument, defense counsel repeatedly stressed that no semen was found during the laboratory tests of the swabs collected from the victim. Defense counsel pointed to (1) the lack of evidence that defendant had used a condom and (2) the victim's testimony that she had not wiped or washed away any semen after the sexual act. Counsel stated, "So the way I look at it, the only possible explanation for the no semen is that there was absolutely no ejaculation at all." Defense counsel then referred to the testimony of Summers and Maggert and argued that "no drops of seminal fluid [] were expelled at all during this whole 10 or 15 minute period."[5] Defense counsel continued:

> I just don't think it adds up. If you believe [the victim] that this went on for 10 or 15 minutes, there should be some seminal fluid. There should be some sperm. There should be something there.

Defense counsel also questioned a comment that the prosecutor made during her closing argument, wherein she stated that it is "really hard" to find skin cells containing an assailant's DNA.

In rebuttal, the prosecutor argued that defense counsel's remark concerning the absence of semen and sperm was a "red herring" because defendant could have penetrated the victim's vagina without ever ejaculating or depositing seminal fluid. The prosecutor explained that she was not required to prove that defendant ejaculated—only that defendant's penis penetrated the victim's vagina.[6] The prosecutor argued that even if defendant did ejaculate, there still might not have been any semen or sperm found on the swabs. Alternatively, citing the victim's testimony that she pushed and fought with defendant during the sex act, the prosecutor suggested that the victim might have gotten away from defendant before he was able to ejaculate. The prosecutor also pointed to Maggert's testimony that it is not common to find an assailant's skin cells in sexual-assault cases.

"A prosecutor's comments must be considered in light of defense arguments," *People v Messenger*, 221 Mich App 171, 181; 561 NW2d 463 (1997), and a prosecutor "is not required to

---

[5] The victim had estimated that the sex act with defendant lasted for approximately 10 or 15 minutes.

[6] "Sexual penetration" is defined in pertinent part as "sexual intercourse . . . or any other intrusion, *however slight*, of any part of a person's body . . . into the genital or anal openings of another person's body, *but emission of semen is not required*." MCL 750.520a(r).

state inferences and conclusions in the blandest possible terms," *Unger*, 278 Mich App at 239. " '[A]n otherwise improper remark may not rise to an error requiring reversal when the prosecutor is responding to the defense counsel's argument.' " *People v Watson*, 245 Mich App 572, 593; 629 NW2d 411 (2001), quoting *People v Kennebrew*, 220 Mich App 601, 608; 560 NW2d 354 (1996).

We acknowledge that it is generally improper for a prosecutor to argue that defense counsel has attempted to mislead the jury through the use of "red herrings." *Unger*, 278 Mich App at 238. But that is not what happened here. The prosecutor, in rebuttal, was merely responding to defense counsel's closing argument by explaining that (1) the absence of semen or sperm did not prove that no penetration occurred, and (2) the absence of defendant's skin cells on the victim was not unexpected and did not prove that no sexual assault happened. These prosecutorial comments were based on reasonable inferences arising from the properly admitted evidence. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995). Defendant was not denied a fair and impartial trial by the prosecutor's remarks during her rebuttal argument.[7] See *Kennebrew*, 220 Mich App at 608.

Defendant also claims that the prosecutor committed misconduct by shifting the burden of proof. It is true that "the prosecutor may not attempt to shift the burden of proof." *People v Abraham*, 256 Mich App 265, 273; 662 NW2d 836 (2003). However, " ' "[i]t is not error to comment on the failure of the defense to produce evidence on a phase of the defense upon which the defendant seeks to rely." ' " *People v Reid*, 233 Mich App 457, 477-478; 592 NW2d 767 (1999), quoting *People v Fields*, 450 Mich 94, 111 n 21; 538 NW2d 356 (1995), in turn quoting *United States v Bright*, 630 F2d 804, 825 (CA 5, 1980). Burden-shifting occurs when the prosecution attempts to absolve itself "from proving each element of the crime beyond a reasonable doubt." *Fields*, 450 Mich at 116.

During rebuttal argument, the prosecutor challenged defendant's theory that the victim had fabricated the allegations of sexual assault and asked the jury why the victim would have made up such a claim, particularly given that the allegations would require her to go through an invasive physical examination. The prosecutor remarked that the defense "never did answer that question," but also informed the jury that "[t]hey don't have to."

This statement did not shift the burden of proof. Although the prosecutor commented that the defense "never did answer that question," she informed the jury that the defense was under no obligation to do so. The remark was isolated, brief, and did not affect the outcome of defendant's trial. *Unger*, 278 Mich App at 239.

---

[7] We further note that these challenged prosecutorial remarks were made in reference to the charge of CSC-I—a charge on which the jury deadlocked. Sexual penetration is not an element of CSC-II. Accordingly, even if the prosecutor technically exceeded the bounds of proper rebuttal argument in this instance, defendant is still unable to demonstrate any prejudice flowing from the remarks.

Moreover, following the prosecutor's rebuttal argument, the trial court instructed the jurors that defendant was "presumed to be innocent" and that "you must start with the presumption that the Defendant is innocent." The trial court continued:

> Every crime is made up of parts called elements. The Prosecutor must prove each element of the crime beyond a reasonable doubt. The Defendant is not required to prove his innocence or do anything. If you find that the Prosecution has not proven every element beyond a reasonable doubt, then you must find the Defendant not guilty.

The court further instructed the jurors that they should "only consider the evidence that has been properly admitted in this case" and that "[t]he lawyers' statements and arguments are [] not evidence." Jurors are presumed to follow their instructions. *People v Mette*, 243 Mich App 318, 330-331; 621 NW2d 713 (2000). We conclude that the trial court's instructions were sufficient to alleviate any possible prejudice flowing from the prosecutor's remark. *Unger*, 278 Mich App at 237, 238.

Having found no prosecutorial misconduct, we cannot agree with defendant's assertion that defense counsel performed deficiently by failing to object to the challenged prosecutorial comments. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010); see also *Unger*, 278 Mich App at 257.

III

We vacate defendant's sentence of 5 to 15 years in prison for CSC-II and remand for resentencing on the CSC-II conviction in accordance with the sentencing grid for Class C felonies.

A

As noted earlier, the probation department and trial court scored the guidelines with respect to defendant's plea-based conviction of CSC-III only, and determined defendant's sentences for both CSC-III (a Class B felony) and CSC-II (a Class C felony) by reference to the sentencing grid for Class B felonies, MCL 777.63. Nevertheless, due to the unique circumstances of this case, we conclude that defendant must be resentenced on his conviction of CSC-II with respect to the sentencing grid for Class C felonies, MCL 777.64.

It is undisputed that the victim was 12 years old at the time of the offense. Yet the trial court accepted defendant's plea of no contest to a charge of CSC-III under MCL 750.520d(1)(a), which provides:

> (1) A person is guilty of criminal sexual conduct in the third degree if the person engages in sexual penetration with another person and if any of the following circumstances exist:

> (a) That other person is *at least 13 years of age* and under 16 years of age. [Emphasis added.]

Defendant's conduct at issue in this case, sexual penetration of a 12-year-old victim, did not fall within the scope of MCL 750.520d(1)(a). Indeed, sexual penetration of a victim under the age of 13 falls exclusively within the scope of the CSC-I statute. Accordingly, defendant's no-contest plea to the charge of CSC-III was invalid.

Despite the invalidity of defendant's no-contest plea, however, we are unable to vacate his conviction of CSC-III. Neither the validity of defendant's no-contest plea nor the legality of his resulting CSC-III conviction is before this Court. Indeed, this Court denied defendant's application for leave to appeal from his plea-based conviction of CSC-III. *People v Kidd*, unpublished order of the Court of Appeals, entered February 4, 2015 (Docket No. 325084). We may not address the validity of defendant's plea-based conviction of CSC-III in this appeal by right from defendant's jury-trial conviction of CSC-II. See Const 1963, art 1, § 20 (stating that "except as provided by law, an appeal by an accused who pleads guilty or nolo contendere shall be by leave of the court").

Notwithstanding our inability to vacate defendant's no-contest plea, we conclude that the invalid plea and resulting conviction of CSC-III should not have played any role in the determination of defendant's sentence for CSC-II. We therefore vacate defendant's sentence for CSC-II (which was determined with reference to the sentencing grid for Class B felonies), and remand to the trial court for resentencing on defendant's CSC-II conviction in accordance with the sentencing grid for Class C felonies, MCL 777.64. Assuming that defendant's total OV score of 30 and total PRV score of 30 do not change on remand, he will fall within cell D-III on the sentencing grid for Class C felonies, calling for a recommended minimum sentence range of 29 to 57 months.[8] *Id.*

B

Defendant also argues that he was sentenced, at least in part, on the basis of irrelevant information. He contends that his score on the Department of Corrections Probation Risk Classification Assessment (CFJ-221) should have been stricken from the PSIR.

At the sentencing hearing, the prosecutor cited the probation risk-classification assessment score in defendant's PSIR:

> The problem I have with this case is you have the assessment from the Department of Corrections utilizing their [sic], you know, their [sic] risk classification measures . . . which usually I've had problems with because they [sic] seem to never find risk associated with classifying offenders, but in this case it did, and I guess that's a red flag to me.

The trial court sentenced defendant without indicating whether it was considering the risk-classification assessment information.

---

[8] We note that defendant's existing sentence for the CSC-II conviction, 5 years (60 months) to 15 years in prison, exceeds this range.

After the appointment of appellate counsel, defendant moved for resentencing and correction of the PSIR. In particular, defense counsel requested that the court strike the results of the risk-classification assessment from the PSIR. Defense counsel asserted that the information was irrelevant because it was not useful in determining the length of defendant's prison sentence. Defense counsel also noted that it was unclear from the transcript of the sentencing hearing whether the trial court had considered the risk-classification assessment when imposing defendant's original sentences.

At the hearing on defendant's motion, the trial court stated that it did not know exactly why the risk-classification assessment information was included in the PSIR, but observed that the probation department routinely included such information in PSIRs in St. Clair County. The court continued:

> I'm use[d] to seeing [the risk-classification assessment information] and this is the first time that I've had anyone, anyone question whether it should or shouldn't be a part of the [PSIR]. How it gets used or not used at this level we've already talked about that, but at this point I don't see any particular reason to strike it from the [PSIR].
>
> To whatever extent I'm assuming that there is some [Department of Corrections] protocol or something that [the probation officer] thinks is a [Department of Corrections] protocol that prompts that information into the [PSIR] and whether it's intended for our use or whether it's intended later on when parole is being considered, I don't know. Much of what goes on at the [Department of Corrections] and parole level is a mystery to all of us and . . . it's unfortunate that it is, but it is. And so I'm going to leave it in [the PSIR] for those reasons and if somebody tells me I'm wrong, then they can tell me I'm wrong.

MCL 771.14(2) and MCR 6.425(A)(1) describe the information that must be included in a PSIR. Neither MCL 771.14(2) nor MCR 6.425(A)(1) expressly mentions the Department of Corrections Probation Risk Classification Assessment (CFJ-221). However, both the statute and court rule allow the probation department to include "[a]n evaluation of and a prognosis for the person's adjustment in the community based on factual information contained in the report." MCL 771.14(2)(a); see also MCR 6.425(A)(1)(j). Whether this includes the risk-classification assessment information at issue in this case has never been addressed by any appellate court in Michigan. Furthermore, we do not have a copy of Department of Corrections form CFJ-221 or any other information concerning the department's risk-classification scheme, we are currently unable to answer this question.

It is well-settled that the trial court must respond when a defendant challenges information contained in the PSIR. *People v Spanke*, 254 Mich App 642, 648; 658 NW2d 504 (2003). The sentencing court may choose to simply disregard the challenged information. However, if the court chooses this option, it must clearly indicate that it did not consider the challenged information in determining the sentence. *Id*. at 648-649. "If the court finds the challenged information inaccurate or irrelevant, it must strike that information from the PSIR before sending the report to the Department of Corrections." *Id*. at 649; see also *People v Hoyt*, 185 Mich App 531, 535; 462 NW2d 793 (1990).

In the instant case, the trial court did not determine whether the risk-classification information in the PSIR was relevant or irrelevant. The court insinuated that it had not relied on the risk-classification information, referring to the Department of Corrections's procedures as "a mystery"; nevertheless, the court declined to strike the challenged information, stating merely that it did not "see any particular reason" to do so. The court never "clearly indicate[d]" whether it had considered the risk-classification information in imposing defendant's sentences. *Spanke*, 254 Mich App at 648-649.

It may well be that the trial court did not consider the challenged risk-classification assessment information when imposing defendant's sentences. But because the court did not state so clearly or strike the information from the PSIR, we can merely speculate as to whether the court relied on the information. *Hoyt*, 185 Mich App at 536. On remand, and prior to resentencing, the trial court shall determine whether the challenged risk-classification assessment information is relevant or irrelevant to determining the length of defendant's prison sentence for CSC-II. *Id*. If the court determines that the risk-classification information is irrelevant for the purpose of sentencing, it shall clearly state on the record that it has not considered the information and shall strike the information from the PSIR. In making this determination, the trial court shall take into account MCL 771.14 and MCR 6.425.

IV

We affirm defendant's conviction of CSC-II but vacate his sentence for CSC-II and remand for resentencing in accordance with the grid for Class C felonies. On remand, and prior to resentencing, the trial court shall also resolve defendant's challenge to the risk-classification assessment information contained in the PSIR consistent with this opinion. Upon imposing a new sentence for defendant's CSC-II conviction, the trial court shall amend the judgment of sentence accordingly.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.


/s/ Kathleen Jansen
/s/ David H. Sawyer
/s/ Karen M. Fort Hood

-8-