# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JACQUES EARL CARPENTER,

        Defendant-Appellant.

UNPUBLISHED
October 15, 2015

No. 319224
Marquette Circuit Court
LC No. 13-051205-FC

Before: MARKEY, P.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions and sentences for voluntary manslaughter, MCL 750.321, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1] Defendant was sentenced to consecutive sentences of 7 to 15 years in prison and two years in prison, respectively. Having reviewed the trial court's opinion and order after our remand to review defendant's claims that he is entitled to a new trial, we affirm defendant's convictions and sentences. However, we again remand for a *Crosby*[2] hearing and for the ministerial correction of defendant's judgment of sentence as to the correct number of jail days for which defendant should be credited, with the days to be credited against the felony-firearm conviction.

Defendant's convictions involve a shooting death that occurred on June 8, 2012. The victim, David Scott Meyer, Jr., was shot in the mouth while in defendant's home. Defense counsel conceded that defendant shot the victim, but maintained that the shooting occurred in self-defense after the victim attempted to attack defendant with a large hunting knife.

Defendant maintains both in his initial appeal and in his supplemental brief after this Court's remand that he is entitled to a new trial because of juror bias and trial counsel's failure to request that juror 71, KM, be either removed for cause or that defendant be entitled to exercise an additional peremptory challenge to remove her. Defendant bases his claim on the admission,

---

[1] Defendant was charged with open murder; the jury rejected alternatives of first and second-degree murder.

[2] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

first discovered on the second day of trial, that KM knew the victim's parents and that KM's third cousin, a childhood friend of the victim, had posted a message on KM's Facebook page that defendant should get what he "deserved."

We review the trial court's decision to deny a motion for a new trial is reviewed for an abuse of discretion. *People v Miller*, 482 Mich 540, 544; 759 NW2d 850, 854 (2008). The trial court abuses its discretion only when its decision is outside the principled range of outcomes. *Id*. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Any findings of fact by the trial court are reviewed for clear error, while questions of law are reviewed de novo. *Id*. Clear error occurs when the reviewing court is left with a definite and firm conviction that the trial court has made a mistake. *Miller*, 482 Mich at 544.

To establish ineffective assistance of counsel a defendant must establish that counsel's performance was deficient as measured against objective reasonableness under the circumstances according to prevailing professional norms and that the deficient performance was so prejudicial as to deprive defendant of a fair trial. *Strickland v Washington*, 466 US 668, 687-688; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). Thus, this Court must determine whether "(1) counsel's performance was below an objective standard of reasonableness under professional norms and (2) there is a reasonable probability that, if not for counsel's errors, the result would have been different and the result that did occur was fundamentally unfair or unreliable." *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). Defense counsel has wide discretion in matters of trial strategy and defendant must overcome the strong presumption that counsel used sound trial strategy. *Id*.; *Strickland*, 466 US at 689. Therefore, this Court will not substitute its judgment for that of defense counsel or review a claim of ineffective assistance of counsel using the benefit of hindsight. *Pickens*, 446 Mich at 330; *Odom*, 276 Mich App at 415. "A failed strategy does not constitute deficient performance." *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008).

At the outset, we find meritless defendant's claim that he should have been awarded an additional peremptory challenge once the parties learned during trial that KM may have known some of the victim's family members. A defendant has no constitutional right to exercise peremptory challenges; the right to do so, in Michigan, is granted by statute and court rule. *People v Daoust*, 228 Mich App 1, 7; 577 NW2d 179 (1998), overruled in part on other grounds by *Miller*, 482 Mich at 561. And, the right to exercise a peremptory challenge exists only until the jury is sworn. *Id.* Therefore, defendant cannot show that he was entitled to an additional peremptory challenge or that the trial court should have sua sponte granted him an extra challenge during trial. Defense counsel was not effective assistance in failing to advance a meritless argument or raise a futile objection. *Petri*, 279 Mich App at 415.

With respect to defendant's additional arguments, defendant correctly notes that he has a right to a fair and impartial jury. US Const, Am VI; Const 1963, art 1, § 20; *Daoust*, 228 Mich App at 7. MCR 2.511(D) provides, in pertinent part, that grounds to challenge a juror for cause include a challenge that the person "is biased for or against a party or attorney" or "shows a state of mind that will prevent the person from rendering a just verdict, or has formed a positive opinion on the facts of the case or on what the outcome should be." MCR 2.511(D)(2), (3). MCR 6.412(D)(2) provides that if "the court finds that a ground for challenging a juror for cause

is present, the court on its own initiative should, or on motion of either party must, excuse the juror from the panel." Similarly, MCL 600.1337 states that "[w]hen the court finds that a person in attendance at court as a juror is not qualified to serve as a juror, or is exempt and claims an exemption, the court shall discharge him or her from further attendance and service as a juror." Nonetheless, "[f]ailure to comply with the provisions of this chapter shall not . . . affect the validity of a jury verdict unless the party . . . claiming invalidity has made timely objection and unless the party demonstrates actual prejudice to his cause . . . ." MCL 600.1354(1). Further, "[a] juror's failure to disclose information that the juror should have disclosed is only prejudicial if it denied the defendant an impartial jury." *Miller*, 482 Mich at 548.

Given the testimony presented at the remand hearing and the trial court's findings, we find that defendant cannot meet his burden. While KM admitted to knowing the victim's parents, she also stated that she did not first admit her knowledge because she did not recognize either of them by their given names. She also maintained that she would have revealed her familiarity with the victim's father, but it slipped her mind. She discussed her relationship with both of the victim's parents and maintained that she only knew them enough to greet them when they met. With respect to the Facebook post, KM maintained that she did not read it, having previously been instructed by the court to base her decision on the evidence presented at trial. KM stated repeatedly that she would base her decision only on the evidence and that she was not biased for either the defendant or the prosecution. The trial court found KM credible and that she evidenced a lack of bias, both during questioning at trial and during the later remand hearing on this issue. We defer to the trial court's findings because the trial court was in a much better position to judge KM's credibility. See *People v Dendel*, 481 Mich 114, 130, 748 NW2d 859 (2008); MCR 2.613(C). Thus, even if defendant could show that trial counsel could have raised a colorable challenge that KM should have been dismissed for cause under MCR 2.511(D)(2) or (3), defendant has not shown that he is entitled to relief. *Miller*, 482 Mich at 548.

With respect to defendant's concurrent claim of ineffective assistance, we find that counsel did not provide ineffective assistance when counsel decided not to seek KM's removal, given that KM did not evidence actual bias. See *Petri*, 279 Mich App at 415. Moreover, defendant cannot demonstrate that he suffered any prejudice from counsel's actions.

Defendant next argues that the trial court erred when following the introduction of defendant's admission to Ishpeming Police Chief Detective Dan Willey that he had shot the victim, the trial court refused to allow defendant to present evidence that he had also told Willey that the victim had attacked him with a knife. Defendant states that he was entitled to introduce his complete statement to Willey under the rule of completeness, and that the failure to do so impermissibly deprived him of his right to present a defense.

Defendant's evidentiary claim was raised and decided below, so it is preserved. But defendant did not argue that the trial court's order impermissibly infringed on his right to present a defense; therefore, this claim was not preserved. *People v Mesik (On Reconsideration)*, 285 Mich App 535, 538; 775 NW2d 857 (2009). We review a trial court's decision to exclude evidence for an abuse of discretion. *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). Whether a defendant suffered a deprivation of his constitutional right to present a defense is reviewed de novo. *People v Steele*, 283 Mich App 472, 480; 769 NW2d 256 (2009).

Because this claim was not preserved, however, this Court's review is for plain error affecting substantial rights. *Mesik (On Reconsideration)*, 285 Mich App at 539.

The admission of hearsay evidence, i.e., an out-of-court statement introduced to prove the truth of the matter asserted, is generally prohibited unless it is governed by an exception to the hearsay rule. MRE 801; MRE 802; *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). While MRE 801(d)(2) permits the introduction of inculpatory out-of-court admissions by party-opponents because they are not hearsay, exculpatory statements are not covered under this rule. They are generally hearsay, with the exception of those permitted under MRE 801(d)(1), which is inapplicable here. Therefore, absent a hearsay exception, defendant's self-serving statements to Willey were not admissible as substantive evidence to prove that defendant shot the victim because the victim first tried to attack defendant with a knife. In addition, this Court has held that "[a]n exculpatory statement by a defendant made after his arrest is properly excluded at trial as self-serving." *People v Taylor*, 98 Mich App 685, 690; 296 NW2d 631 (1980).

Defendant cites the rule of completeness in support of his claim that the trial court's ruling was erroneous. MRE 106 provides: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." By its terms, MRE 106 only applies if a writing or recorded statement, or part thereof, is introduced. The prosecutor questioned Willey regarding what defendant said during his interviews but never introduced a written or recorded version of the statement. Further, MRE 106 applies only "if defendant sought, but was denied, permission to have a complete writing or recorded statement introduced." *People v McGuffey*, 251 Mich App 155, 161; 649 NW2d 801 (2002). Defendant never sought to have a written or recorded statement introduced. Because neither the prosecutor nor defendant sought to introduce a written or recorded version of defendant's statement, MRE 106 is inapplicable.

Defendant also claims that he was denied the right to present a defense, but this constitutional right is not absolute. *People v Unger*, 278 Mich App 210, 249-250; 749 NW2d 272 (2008). "The right to present a complete defense 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.' " *King*, 297 Mich App at 473, quoting *Chambers v Mississippi*, 410 US 284, 295; 93 S Ct 1038; 35 L Ed 2d 297 (1973). "The Michigan Rules of Evidence do not infringe on a defendant's constitutional right to present a defense unless they are arbitrary or disproportionate to the purposes they are designed to serve." *Id.* at 474 (citations and internal quotation marks omitted). Defendant has not argued that the hearsay rules are arbitrary or disproportionate. Nor was defendant denied the ability to raise and explore his underlying claim of self-defense. Accordingly, defendant has not demonstrated that his right to present a defense was denied.

We decline to review defendant's concurrent claim of ineffective assistance of counsel because he has failed to present any discussion of this claim in his appellate materials. See *King*, 297 Mich App at 474; *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004).

Defendant next argues that his counsel provided ineffective assistance when he failed to move to suppress initial statements defendant gave to the police when they first arrived at his

home.  Because this issue is unpreserved, this Court's review is limited to mistakes apparent in the lower court record. *People v Fike*, 228 Mich App 178, 181; 577 NW2d 903 (1998).

Marquette County Sheriff Deputy Betsy Rochon testified that after she took Justin Saari, an acquaintance of both defendant and the victim who testified that he witnessed the shooting, to the home where Saari told her that the shooting had occurred, she saw defendant outside.  As she approached defendant, after he tried to ignore her, she asked him whether he had any weapons on him. (Rochon was wearing a video recording device.)  She testified that defendant "sheepishly" replied that he did not.  She then asked him, "Did you just shoot someone just now?" He replied, "What are you talking about?"  She then asked him if there was someone who was hurt in the home, and he asked her, "Where did you get this information?"  She then noticed that defendant appeared to have blood on the front of his sweater and all over his hands.  According to Rochon, when Ishpeming Police Officer Brent Zaborowske, who was also at the scene, told defendant that he had blood on his hands, defendant responded "Where?" repeatedly.  Rochon stated that Michigan State Police Trooper Stacey Rasanen arrived at the home and held on to defendant. Rochon and Zaborowske both testified that they went into the home.  When Rochon came back outside, she spoke again with defendant and read him the *Miranda* warnings.[3]  During cross-examination, Rochon admitted that defendant also told her that the victim had pulled a knife on defendant.  The video of the initial interaction with defendant recorded by Rochon's body camera was played for the jury.

Under the record presented, we agree with the prosecution that, even to the extent we might find merit in defendant's assertion that he was first entitled to *Miranda* warnings before the officers' initial questioning, we see no error warranting reversal.  Defendant was charged with open murder.  Defense counsel may have deliberately decided not to object to the introduction of the testimony, and the video, in support of defendant's claim that he only acted in self-defense or, at the least, did not possess the requisite intent for first-degree murder. Defendant told Rochon and Zaborowske, consistent with the defense at trial, that the victim had attacked him first, or at least that the victim had "pulled a knife," the implication of which is that the victim threatened defendant.  Defendant's response could be used to argue that he was at least confused, if not in shock.  Indeed, deciding not to challenge the introduction of the testimony and video can be viewed as partly successful given that defendant was convicted of manslaughter and not open murder.

In addition, defendant's responses to Rochon were not inculpatory.  Moreover, the mere fact that defendant was the person who shot the victim, while admittedly still an element to be proven at trial, was not seriously contested.  Defendant cannot show that any error was likely prejudicial.

Defendant next argues that the trial court should have found that the verdicts were against the great weight of the evidence.  Defendant bases this argument on the fact that although Saari testified at trial that defendant shot the victim without provocation, he first told Rochon that the

---

[3] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

victim had attacked defendant with a knife, a story he repeated during the preliminary examination and to defense counsel a few days before trial.

We review a trial court's denial of a defendant's motion for a new trial on the basis that the verdict was against the great weight of the evidence for an abuse of discretion. *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). "The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Id*. A verdict will be set aside only when the evidence does not reasonably support it but rather is explained by extraneous influences such as sympathy, prejudice, or other passions. *Id*. "Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *People v Lemmon*, 456 Mich 625, 647; 576 NW2d 129 (1998).

In *Lemmon*, 456 Mich at 642, our Supreme Court explained that "absent exceptional circumstances," a trial court may not substitute its view regarding the credibility of witnesses as determined by a jury. The Court referred to tests developed by the federal courts in defining the exceptional circumstances that must exist before a trial court may interfere with a jury's credibility determination, which include: (1) testimony that contradicts indisputable physical facts or laws, (2) testimony that is patently incredible or defies physical realities, (3) testimony so inherently implausible that it could not be believed by a reasonable juror, or (4) testimony that has been seriously impeached and the case is marked by uncertainties and discrepancies. *Id*. at 643-644. In other words, "unless it can be said that directly contradictory testimony was so far impeached that it was deprived of all probative value or that the jury could not believe it, or contradicted indisputable physical facts or defied physical realities, the trial court must defer to the jury's determination." *Id*. at 645-646 (citation and internal quotation marks omitted). And even if such a circumstance exists, the trial court must determine if there is a real concern that an innocent person was convicted or that it would be a manifest injustice for a guilty verdict to stand. *Id*. at 644.

As noted in *Lemmon* and *Lacalamita*, the mere fact that Saari's testimony was contradictory to his earlier statements to police and during the preliminary examination is insufficient to support the grant of a new trial. The jury was free to believe all or part of his testimony. *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999).

As discussed at length by the trial court in its opinion after remand, Saari's trial testimony concerning the shooting was not directly refuted by any evidence. The only evidence supporting defendant's version of the events was the testimony concerning his statements to officers upon his arrest. The knife was not found near the victim, and there was no evidence of a struggle. Moreover, Paul Makosky testified that while they were both in jail, defendant admitted shooting the victim. Makosky further testified that that defendant did not say anything about the victim's first coming at the defendant with a knife or about his acting in self-defense. And the specifics of Makosky's testimony, i.e., that defendant was threatening the victim with the gun when the victim said, "If you're gonna shoot me, shoot me," and that the defendant then stuck the gun in the victim's face and pulled the trigger, mirrored the account Saari gave at trial. In addition, Saari presented a rational basis for his change of testimony and was fully questioned concerning his motives and the consideration he would receive in his own sentencing. The court did not abuse its discretion by denying the request for a new trial. *Lacalamita*, 286 Mich App at 469.

Defendant next challenges the scoring of offense variables (OVs) 5, 9, and 19. "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. Any statutory interpretation or constitutional question concerning the application of the sentencing guidelines presents a question of law subject to de novo review on appeal. See *People v Cannon*, 481 Mich 152, 156; 749 NW2d 257 (2008).

MCL 777.35(1)(a) provides that the trial court must assess 15 points for OV 5 if "[s]erious psychological injury requiring professional treatment occurred to a victim's family." Whether a victim has in fact sought treatment is not determinative. MCL 777.35(2). Here, the trial court agreed with the prosecutor that OV 5 should be scored at ten points after finding that the impact of the victim's death was "apparent to anyone sitting in this courtroom" and that, given the family members' demeanors, it was reasonably likely that they would need some type of counseling in the future. During sentencing, the victim's mother, Trudy Gustafson, spoke. Among her comments, she described that it was "devastating" for a parent to lose a child. "And this has been a very emotional distress and sleepless nights every day of my life." The mother of the victim's children, Kristen Leach, described what the victim's death meant to her and to his children and that she was lost without him. Given these statements and keeping in mind that the trial court was in the best position to judge the demeanor of the witnesses, see *Dendel,* 481 Mich at 130, we conclude that the trial court's finding that this guideline was correctly scored was not plainly erroneous.

The court's scoring of OV 9 is a closer issue. MCL 777.39(1)(c) provides that ten points are to be scored when, as applied to this case, two to nine victims were placed in danger of physical injury or death. As applied to this case, MCL 777.39(2)(a) provides that the trial court is to count each person who was placed in danger of physical injury or loss of life as a victim. Here, during trial, Saari testified that he was in the room with the victim and defendant at the time of the shooting. Testimony was also presented that the victim was shot from a distance of three to seven feet and that defendant was highly intoxicated at the time of the shooting. Saari also testified that defendant wanted Saari to help get rid of the body. Saari also testified that defendant "said I ain't going to the police," which sounds like a demand and perhaps even an ultimatum under the totality of the circumstances. The trial court did not clearly err in finding that even though defendant's initial animosity was toward the victim, Saari was also in danger of receiving either a poorly-aimed shot by an intoxicated defendant, or becoming the next target for defendant's aggression if Saari did not help get rid of the victim's body or comply with the demand not to go to the police.

With respect to OV 19, MCL 777.49 provides that 10 points are to be scored when an offender "otherwise interfered with or attempted to interfere with the administration of justice." Here, as discussed above, not only was evidence presented that defendant moved the victim's body, Saari also testified that defendant attempted to elicit his help in covering up the murder. In addition, defendant's use of bleach, his actions in moving bloodstained bedding outside, and his attempt to hide the gun all support the scoring for this variable.

Defendant next presents the unpreserved argument that the trial court engaged in judicial fact-finding contrary the holding of *Alleyne v United States*, ___ US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013). Our Supreme Court recently agreed with this argument by holding with respect to Michigan's sentencing guidelines that "the Sixth Amendment does not permit judicial fact-finding to score OVs to increase the floor of the sentencing guidelines range." *People v Lockridge*, ___ Mich ___, ___; ___ NW2d ___ (2015), slip op at 26. The *Lockridge* Court rewrote the sentencing guidelines to "sever MCL 769.34(2) to the extent that it is mandatory and strike down the requirement of a 'substantial and compelling reason' to depart from the guidelines range in MCL 769.34(3)." *Id.*, op at 29. This remedy renders the sentencing guidelines advisory only. *Id.*, op at 36.

In this case, defendant has made a threshold showing of plain error because (1) his guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment, and (2) his sentence was not subject to an upward departure. *Id.*, op at 32-33. Thus, we must remand "to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error. If the trial court determines that the answer to that question is yes, the court shall order resentencing." *Id.*, op at 34. On remand, the trial court shall first offer defendant the opportunity to renounce his request for resentencing following the procedures outlined in *Lockridge*. *Id.*, op at 35, citing *United States v Crosby*, 397 F3d 103, 118, 120 (CA 2, 2005). Finally, when determining whether it "would have imposed a materially different sentence but for the unconstitutional constraint, the [trial] court should consider only the 'circumstances existing at the time of the original sentence.' " *Id.*, op at 35-36, quoting *Crosby*, 397 F3d at 117.

Defendant lastly argues that he was entitled to an additional day of jail credit, and his time served should have been credited to his felony-firearm conviction rather than his manslaughter conviction. The prosecution agrees with these claims, noting that defendant is correct that his felony-firearm sentence is to be served first. See MCL 750.227b(2). On remand, defendant's judgment of sentence should be corrected, even if resentencing is not ordered.

We affirm and remand for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Cynthia Diane Stephens
/s/ Michael J. Riordan