# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 18, 2016

Plaintiff-Appellee,

v

No. 322750
Wayne Circuit Court
LC No. 13-009710-FH

TONY JEROME-JERRY HARRIS,

Defendant-Appellant.

Before: CAVANAGH, P.J., and RIORDAN and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of third-degree fleeing or eluding a law enforcement officer, MCL 257.602a(3)(a). The trial court sentenced him, as a second habitual offender, MCL 769.10, to a prison term of 1 to 7 $^1/_2$ years. We affirm defendant's conviction, but remand for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

At approximately 7:00 p.m. on October 10, 2013, three Michigan State Police Troopers were driving on the west side of Detroit in a blue Chevrolet Tahoe bearing state police markings, emergency lights, and sirens. All of the officers were in full uniform. The troopers made a U-turn to follow a Mercury Grand Marquis driven by an African-American male because it had an unlawfully tinted driver's side window. The Grand Marquis sped away, and the troopers pursued the vehicle. As the Grand Marquis turned onto West McNichols Road, they activated the police vehicle's emergency lights and siren. The Grand Marquis then accelerated at a "high rate of speed," drove through multiple stop signs in a residential neighborhood, and stopped after striking a fire hydrant. The driver exited the vehicle and fled on foot, leaving behind an infant child in a car seat.

Contrary to the officers' version, defendant testified that a large, blue vehicle rear-ended his car more than once, which prompted him to speed away from the larger vehicle until he crashed into a fire hydrant. Tamara Adams, the mother of defendant's son, testified that she had been talking to defendant on his cell phone around 7:00 p.m. on October 10, 2013, at which time she heard loud banging sounds, Adams and defendant both began screaming, and defendant declared, "[T]hey hit me."

-1-

Defendant said he saw lights on the large blue vehicle illuminate, but he did not believe that the vehicle contained police officers who were trying to stop him. As two state police officers exited their car and approached defendant with their guns in hand, defendant said that he raised his hands, but then the officers assaulted him. He claimed that he ran away, but two other officers pointed their guns at him, stopped him, handcuffed him, and then tackled him face-first to the ground. Additionally, defendant testified that many officers repeatedly punched the back of his head, kicked him, and kneed his groin, which caused significant injuries and made him "urinate all over [him]self."

Deborah Sinclair also testified for the defense and supported defendant's version of the events. She said that while taking a walk she saw defendant run "from the . . . side of [a] house" and heard him yell that "they were beating [and chasing] him." She claimed that she watched a Caucasian officer tackle him and push his face into the concrete ground. Then, she said that three other officers arrived and all of them beat, punched, kicked, and "stomp[ed]" defendant, as well as "kneed him in his groin," even after placing him in handcuffs. According to Sinclair, defendant ultimately passed out and urinated on himself.

During her testimony, Adams also confirmed that defendant incurred multiple bruises and injuries during the incident.

## II. REJECTION OF PLEA AGREEMENT

Before trial, defendant attempted to plead guilty to third-degree fleeing or eluding pursuant to a plea agreement under which the prosecution agreed to dismiss the habitual offender notice. The trial court determined that defendant's admissions failed to establish a factual basis for the plea and refused to accept it.

On appeal, defendant argues that he offered an adequate factual foundation for his plea because he conceded that he drove away after realizing that the police wanted to stop his car. Accordingly, defendant asserts that the trial court's rejection of the plea was motivated only by its personal dislike of defendant. We disagree.

### A. STANDARD OF REVIEW

We review for an abuse of discretion a trial court's decision to accept a plea agreement. *People v Plumaj*, 284 Mich App 645, 648; 773 NW2d 763 (2009). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id*. (quotation marks and citation omitted). To the extent that the trial court's rejection of a plea requires the interpretation of a statute or court rule, we review such issues *de novo*. *Id*.; see also *People v Williams*, 483 Mich 226, 231; 769 NW2d 605 (2009). When construing a statute or "court rule, we begin with its plain language; when that language is unambiguous, we must enforce the meaning expressed, without further judicial construction or interpretation." *Williams*, 483 Mich at 232.

### B. ANALYSIS

A trial court must question a defendant to establish a factual basis for concluding that the "defendant is guilty of the offense charged, or the offense to which the defendant is pleading."

MCR 6.302(D)(1). An adequate factual basis exists if "the fact-finder could have found the defendant guilty on the basis of the facts elicited from the defendant at the plea proceeding." *People v Fonville*, 291 Mich App 363, 377; 804 NW2d 878 (2011).

In *People v Grayer*, 235 Mich App 737, 741; 599 NW2d 527 (1999), citing MCL 750.479a(3),[1] this Court delineated the elements of third-degree fleeing or eluding:

> (1) the law enforcement officer must have been in uniform and performing his lawful duties and his vehicle must have been adequately identified as a law enforcement vehicle, (2) the defendant must have been driving a motor vehicle, (3) the officer, with his hand, voice, siren, or emergency lights must have ordered the defendant to stop, (4) the defendant must have been aware that he had been ordered to stop, (5) the defendant must have refused to obey the order by trying to flee from the officer or avoid being caught, which conduct could be evidenced by speeding up his vehicle or turning off the vehicle's lights among other things, and (6) some portion of the violation must have taken place in an area where the speed limit was thirty-five miles an hour or less, or the defendant's conduct must have resulted in an accident or collision, or the defendant must have been previously convicted of certain prior violations of the law as listed in MCL 750.479a(3)(c) . . . .

At the plea hearing, defendant testified that on October 10, 2013, he was driving in Detroit near McNichols Road when a vehicle came around a street corner and immediately bumped the back of defendant's car. He explained that he sped away "out of panic," driving faster than 35 miles per hour. Defendant denied that he was aware that the vehicle which struck his car was a police vehicle, or that a police vehicle had any reason to stop or pursue his vehicle. It was only after he sped away that he recognized the other vehicle as a police vehicle when it activated its lights and siren. Defendant admitted that he continued driving until he crashed into a fire hydrant. The trial court refused to accept the plea because defendant's testimony did not establish that the police lawfully commenced their pursuit of defendant.

A necessary element of third-degree fleeing or eluding is that a law enforcement officer was "acting in the lawful performance of his or her duty." MCL 257.602a(1); see also *Grayer*, 235 Mich App at 741. Although defendant testified that he later recognized the vehicle as a police vehicle after it activated its lights and siren, and acknowledged that he thereafter refused to stop before his vehicle struck a fire hydrant, he insisted that the pursuit began when the police vehicle bumped the back of his vehicle for no apparent reason. Although defense counsel argued that the bumping occurred in the course of the police pursuit, defendant did not offer any reason for the police to lawfully pursue his vehicle at that point in time. On the contrary, in response to questioning by the court, defendant expressly agreed with the trial court's statement that "some crazed [s]tate trooper c[a]me[] around the corner and hit[] him in the back for no reason."

---

[1] When this Court decided *Grayer*, fleeing and eluding was proscribed by MCL 750.479a. Substantively identical language now appears in MCL 257.602a.

Thus, the trial court properly concluded that it could not "have found the defendant guilty on the basis of the facts elicited from the defendant at the plea proceeding" because defendant's testimony did not provide a factual basis for finding, or a basis for an inculpatory inference, that the officers were performing their lawful duties when they encountered defendant on October 10, 2013. See *Grayer*, 235 Mich App at 741. As such, the trial court's rejection of defendant's guilty plea was not outside the range of reasonable and principled outcomes. Additionally, contrary to defendant's claim on appeal, there is no indication in the record that the trial court refused to accept the plea because it disliked defendant or harbored bias against him. See *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000) (discussing a defendant's "burden of furnishing the reviewing court with a record to verify the factual basis of any argument upon which reversal was predicated").

## III. LATE WITNESS

Defendant next argues that the trial court abused its discretion when it denied his request to call Orlando Jones as a witness at trial. On the second day of trial, defense counsel explained that the defense discovered Jones on the first day of trial, which had begun the previous week. We disagree.

## A. STANDARD OF REVIEW

Because both of defendant's claims regarding the preclusion of Jones' testimony were not properly preserved for appeal, see MRE 103(a)(1); *People v Grant*, 445 Mich 535, 545-547; 520 NW2d 123 (1994); *People v Bulmer (After Remand)*, 256 Mich App 33, 35; 662 NW2d 117 (2003), we review these arguments for plain error affecting defendant's substantial rights, *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To demonstrate such an error, a defendant must show that (1) an error occurred, (2) the error was clear or obvious, and (3) "the plain error affected [the defendant's] substantial rights," which "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. at 763. Even if a defendant establishes a plain error that affected his substantial rights, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted; second alteration in original).

## B. ANALYSIS

Pursuant to MCR 6.201(A)(1), which governs discovery in criminal cases,

> a party upon request must provide all other parties . . . (1) the names and addresses of all lay and expert witnesses whom the party may call at trial; in the alternative, a party may provide the name of the witness and make the witness available to the other party for interview; the witness list may be amended without leave of the court no later than 28 days before trial[.]

A discovery order was entered in this case, which required defense counsel, pursuant to MCR 6.201, to disclose to the prosecution a list of the names and addresses of all witnesses that the

defense intended to call at trial within 21 days after the entry of the discovery order. The order was entered nearly two months prior to trial.

It is undisputed that the defense discovered Jones on May 29, 2014, the first day of trial. MCR 6.201(H) provides, "If at any time a party discovers additional information or material subject to disclosure under this rule, the party, without further request, must promptly notify the other party." On June 2, 2014, the second day of trial, defense counsel conceded that she learned of Jones' existence on May 29, 2014, but failed to tell the prosecutor his identity until after the prosecution had concluded its case-in-chief. Accordingly, it is apparent that a discovery violation occurred under MCR 6.201(H).

MCR 6.201(J) provides that "[i]f a party fails to comply with this rule, the court, in its discretion, may . . . prohibit the party from introducing in evidence the material not disclosed." The sanction for a discovery violation should "balance[e] the interests of the courts, the public, and the parties." *People v Davie (After Remand)*, 225 Mich App 592, 598; 571 NW2d 229 (1997) (quotation marks and citation omitted). Thus, "the complaining party must show that the violation caused him or her actual prejudice." *People v Greenfield*, 271 Mich App 442, 456 n 10; 722 NW2d 254 (2006).

"[T]he sanction of preclusion is extreme and should be limited to only the most egregious cases." *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008), citing *People v Merritt*, 396 Mich 67, 82; 238 NW2d 31 (1976); see also *Greenfield*, 271 Mich App at 456 n 10. "[I]t would be improper to exclude the defense where neither serious abuse of the right on the part of defendant nor prejudice to the people's case have been demonstrated." *Yost*, 278 Mich App at 381 (quotation marks omitted), quoting *Merritt*, 396 Mich at 82.

Here, the prosecutor objected to the admission of Jones' testimony because defense counsel knew about the witness the previous week, but did not disclose the identity of the witness until after the prosecution had rested. The prosecution did not assert that it was prejudiced, or would be prejudiced, if the trial court allowed Jones to testify. Nevertheless, the trial court denied defense counsel's motion to allow the defense to call Jones, explaining that "a discovery order in the file . . . requires that you let [the prosecution] know about your witnesses ahead of time. So[] that they could of [sic] actually interview[ed] and talk[ed] to them."

Because the defense was unaware of Jones until the first day of trial, it does not appear that the lateness of defendant's motion was motivated by gamesmanship or otherwise constituted an abuse of defendant's right to call witnesses. See *id*. at 383. However, defense counsel acknowledged that she failed to timely notify the prosecutor of Jones' existence. Moreover, the defense made no contact with Jones before moving to call him as a defense witness, and it neglected to make an offer of proof concerning any potential testimony that Jones could offer. Under these circumstances, we cannot conclude that the trial court's denial of defendant's motion—following the close of the prosecution's case-in-chief—and exclusion of Jones' testimony constituted plain error. See *Carines*, 460 Mich at 763-764.

Further, even if we were to conclude that the trial court abused its discretion in excluding Jones' testimony, the record includes no basis to conclude that this purported error affected the outcome of the proceedings. See *id*. at 763. Defendant carries "the burden of furnishing the

reviewing court with a record to verify the factual basis of any argument upon which reversal [is] predicated." *Elston*, 462 Mich at 762. Defendant did not contend in the trial court, and he does not argue on appeal, that Jones' testimony was exculpatory or would have provided information that raised a reasonable doubt as to whether defendant committed third-degree fleeing and eluding. He merely identifies Jones as an additional "impartial" witness to the incident giving rise to defendant's conviction. As such, defendant's failure to make an offer of proof regarding the substance of Jones' testimony, or even interview Jones prior to requesting admission of his testimony, makes it impossible for us to conclude that defendant's substantial rights were affected. See *People v Hampton*, 237 Mich App 143, 154; 603 NW2d 270 (1999).

For the same reasons, defendant has failed to establish that the preclusion of Jones' testimony violated his right to present a defense. Defendant has abandoned review of this issue by failing to argue or explain either the substance of Jones's testimony or the prejudice that he incurred when the trial court excluded the evidence. *People v King*, 297 Mich App 465, 474; 824 NW2d 258 (2012) ("An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." [Quotation marks and citation omitted.]) Furthermore, defendant had "a meaningful opportunity to present a complete defense" during the trial through defense counsel's cross-examination of the prosecution's witnesses; the introduction of testimony from Tamara Adams, Deborah Sinclair, and the defendant in support of his theory; and defense counsel's presentation of arguments in his defense. See *King*, 297 Mich App at 473-474 (quotation marks and citation omitted); *People v Mesik (On Reconsideration)*, 285 Mich App 535, 537-538; 775 NW2d 857 (2009).

Thus, defendant has failed to establish a plain error affecting his substantial rights.

## IV. JUDICIAL BIAS

Defendant next contends that the trial court's interjections and statements throughout the trial demonstrated judicial bias that pierced the veil of impartiality and violated his right to a fair trial. We disagree.

## A. STANDARD OF REVIEW

Because defendant did not raise a claim of judicial bias in the trial court, his claims are unpreserved and reviewed for plain error affecting his substantial rights. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011), citing *Carines*, 460 Mich at 763-764; cf. *People v Stevens*, 498 Mich 162, 180 n 6; 869 NW2d 233. Because judicial bias is a structural error, *Stevens*, 498 Mich at 178; *People v Duncan*, 462 Mich 47, 52; 610 NW2d 551 (2000), a defendant is automatically prejudiced by such an error, *People v Vaughn*, 491 Mich 642, 666; 821 NW2d 288 (2012). However, in order to warrant a new trial, the error must have "resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of" the trial proceedings. *Id.* at 666–667 (quotation marks and citation omitted). Whether the error meets this standard is examined on a case-by-case basis and on the basis of the facts of the particular case. *People v Cain*, 498 Mich 108, 121; 869 NW2d 829 (2015).

## B. APPLICABLE LAW

In *Stevens*, 498 Mich at 168-169, the Michigan Supreme Court articulated a new standard for reviewing judicial partiality. The Court held:

> A trial judge's conduct deprives a party of a fair trial if the conduct pierces the veil of judicial impartiality. A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party. In evaluating the totality of the circumstances, the reviewing court should inquire into a variety of factors including, but not limited to, the nature of the trial judge's conduct, the tone and demeanor of the judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions, either at the time of an inappropriate occurrence or at the end of trial. [*Id*. at 164; see also *id*. at 168-180.]

## C. APPLICATION

Defendant provides no explanation on appeal regarding how each of the alleged instances of judicial bias influenced the jury.[2] Likewise, our review of the record confirms that "it is [not] reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against" the defense. *Id*. at 164.

First, we reject all of defendant's claims of judicial bias arising from the trial court's objections to compound or leading questions posed by defense counsel, the trial court's comments and clarifications regarding unclear questions raised by the defense, and the trial court's evidentiary objections. Pursuant to MRE 611(a), the trial court is authorized to exercise reasonable control over counsel's questioning of witnesses in order to "make the interrogation and presentation effective for the ascertainment of the truth, [and] . . . avoid needless consumption of time." It does appear from the record that the trial court interjected more frequently during the defense's questioning of the witnesses than during the prosecution's examinations. See *Stevens*, 498 Mich at 164, 177. However, in each instance identified by defendant on appeal, the trial court correctly characterized the questions raised by defense counsel as unclear or compound, which created the potential for confusion regarding the witnesses' answers. Likewise, the trial court properly noted that leading questions on direct examination are not permitted pursuant to MRE 611(d). Finally, defendant has provided no explanation, argument, or authority indicating how any of the evidentiary objections were improper and not in accordance with MRE 611(a), or how that conduct improperly influenced the jury. See *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001).

---

[2] We recognize that defendant filed his brief on appeal before the Michigan Supreme Court articulated the new standard in *Stevens*. Nevertheless, defendant did not provide *any* explanation regarding the way in which the alleged instances of judicial bias improperly influenced the jury even under the previous tests. See *Stevens*, 498 Mich at 169-170.

Similarly, the questions raised by the trial court during defense counsel's examination of a witness were limited to circumstances when defense counsel's questions or the witness's responses were vague, confusing, or lacking detail in such a way that the responses were susceptible to multiple interpretations. The trial court was permitted to ask questions pursuant to MRE 614(b), and there is no indication that the questions were hostile, "intimidating, argumentative, or skeptical" against defendant. See *Stevens*, 498 Mich at 175; cf. *id*. at 180-186 (describing improper questioning by the trial court).

We similarly reject defendant's claim arising from the trial court's statements on the record, *after* the jury left the courtroom, regarding defense counsel's use of her cell phone to record prior hearings and her apparent request to use the cell phone recording to refresh a witness's recollection. Because the jury was not present during this exchange, there is no basis for concluding that the trial court improperly influenced the jury in this regard. *Id*.

In addition, we reject defendant's claim that the trial court "impeached defense counsel's credibility" by criticizing defense counsel when she attempted to ask a police officer whether defendant was "running more than 25 miles an hour." Even if we assume, arguendo, that defendant's characterization of the trial court's statements is accurate, defense counsel was not a witness in this case. Thus, it is extremely unlikely that the trial court's limited and insignificant statement on this topic influenced the jury given the fact that defense counsel's statements were not evidence, see *People v Meissner*, 294 Mich App 438, 457; 812 NW2d 37 (2011); *Papke v Tribbey*, 68 Mich App 130, 137; 242 NW2d 38 (1976), and the trial court properly instructed the jury as such, see *Stevens*, 498 Mich at 190.

Furthermore, defendant mischaracterizes the record in asserting that the trial court "suggested during [defense counsel's] opening statement that . . . counsel was not going to support her opening statement with evidence." Moreover, the trial court's statements during counsel's opening statement were not improper. See MCR 2.507(A); *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 503; 668 NW2d 402 (2003) (explaining the purpose of an opening statement); *People v Finley*, 161 Mich App 1, 9; 410 NW2d 282 (1987) (explaining the purpose of a closing argument), aff'd 431 Mich 506 (1988).

Finally, with regard to all of defendant's claims, we find significant the fact that the trial court instructed the jury at the end of the trial: (1) "Remember[] that you've taken an oath to return a true and just verdict based only on the evidence and my instructions on the law"; (2) "[M]any things are not evidence and you must be careful not to consider them as such. . . . My comments, my rulings, my questions and my instructions are also not evidence"; and (3) "If you believe that I have an opinion about how you should decide this case, you must pay no attention to that opinion." See *Stevens*, 498 Mich at 190. "Because [i]t is well established that jurors are presumed to follow their instructions, a curative instruction will often ensure a fair trial despite minor or brief inappropriate conduct." *Id*. at 177 (quotation marks and citation omitted). Although "in some instances judicial conduct may so overstep its bounds that no instruction can erase the appearance of partiality," it is clear that the judicial conduct in this case did not rise to such a level. Accordingly, to the extent that the trial court's conduct could be deemed improper, we presume that the court's instructions cured the error.

Thus, in reviewing the totality of the circumstances, defendant has failed to establish that reversal is warranted on the basis of judicial bias. See *Jackson*, 292 Mich App at 597; *Vaughn*, 491 Mich at 666-667.

## V. UPWARD DEPARTURE SENTENCE

### A. APPLICABLE LAW

Lastly, defendant argues that the trial court abused its discretion when it departed from the range calculated under the sentencing guidelines[3] because the trial court failed to provide substantial and compelling reasons for the departure. See *People v Smith*, 482 Mich 292, 299-300; 754 NW2d 284 (2008). However, after defendant filed his brief on appeal, significant changes to Michigan's sentencing scheme were effectuated by the Michigan Supreme Court in *People v Lockridge*, 498 Mich 358, 364-365, 391-392; 870 NW2d 502 (2015), which held, *inter alia*, that a trial court is no longer required to provide a substantial and compelling reason for a departure sentence. The proper inquiry on appeal is whether defendant's departure sentence is reasonable. *People v Shank*, ___ Mich App ___, ___; ___ NW2d ___ (2015) (Docket No. 321534); slip op at 2; *People v Steanhouse*, ___ Mich App ___ ___; ___ NW2d ___ (2015) (Docket No. 318329); slip op at 21; *People v Terrell*, ___ Mich App ___; ___; ___ NW2d ___ (2015) (Docket No. 321573); slip op at 7. However, the *Lockridge* Court did not set forth a procedure for reviewing a sentence for reasonableness. *Shank*, ___ Mich App at ___; slip op at 2; *Steanhouse*, ___ Mich App at ___; slip op at 21. Accordingly, the *Steanhouse* Court adopted the "principle of proportionality" that was previously in use pursuant to *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990), "hold[ing] that a sentence that fulfills the principle of proportionality under *Milbourn* and its progeny constitutes a reasonable sentence under *Lockridge*." *Id*. at ___; slip op at 23-24. In addition, the *Steanhouse* Court established the following procedure for reviewing a defendant's departure sentence:

> Given that *Lockridge* overturned the substantial and compelling reason standard, *Lockridge*, ___ Mich at ___; slip op at 29, which was in place at the time of defendant's sentencing, and given our conclusion that the principle of proportionality established under *Milbourn* and its progeny is now the appropriate standard by which a defendant's sentence should be reviewed, we also find that the procedure articulated in *Lockridge*, and modeled on that adopted in *United States v Crosby*, 397 F3d 103 (CA 2, 2005), should apply here. *Lockridge*, ___ Mich at ___; slip op at 33-36. As recently stated by this Court in *People v Stokes*, ___ Mich App ___, ___; ___NW2d ___ (2015); slip op at 11, "the purpose of a

---

[3] The sentencing guidelines range for defendant's third-degree fleeing or eluding conviction was 0 to 11 months. MCL 777.66. Defendant's status as a second habitual offender increased that range to 0 to 13 months, MCL 777.21(3)(a), causing the sentencing range to fall within an intermediate sanction cell, see MCL 769.34(4). Defendant urged the trial court to impose a term of probation, as contemplated under MCL 769.34(4)(a) and MCL 769.10(1)(a). Both parties agree that the trial court departed from the guidelines when it imposed a sentence of 1 to 7 $\frac{1}{2}$ years' imprisonment.

*Crosby* remand is to determine what effect *Lockridge* would have on the defendant's sentence, so that it may be determined whether any prejudice resulted from the error." While the *Lockridge* Court did not explicitly hold that the *Crosby* procedure applies under the circumstances of this case, we conclude this is the proper remedy where, as here, the trial court was unaware of and not expressly bound by a reasonableness standard rooted in the *Milbourn* principle of proportionality at the time of sentencing.

Under the *Crosby* procedure, which "offers a measure of protection to a defendant[,]" "a defendant is provided with an opportunity 'to avoid resentencing by promptly notifying the trial judge that resentencing will not be sought.' " *Stokes*, ___ Mich App at ___; slip op at 11-12, quoting *Lockridge*, ___ Mich at___; slip op at 35. Given the possibility that defendant could receive a more severe sentence, defendant should be provided the opportunity to avoid resentencing if that is his desire. *Stokes*, ___ Mich App at ___; slip op at 12. Accordingly, we remand the matter to the trial court to follow the *Crosby* procedure outlined in *Lockridge*. Defendant "may elect to forego resentencing by providing the trial court with prompt notice of his intention to do so. If 'notification is not received in a timely manner,' the trial court shall continue with the *Crosby* remand procedure as explained in *Lockridge*." *Stoke*s, ___ Mich App at ___; slip op at 12, quoting *Lockridge*, ___ Mich at ___; slip op at 35-36. [*Steanhouse*, ___ Mich App at ___; slip op at 25; see also *Shank*, ___ Mich App at ___; slip op at 2-3.]

## B. APPLICATION

As in *Steanhouse* and *Shank*, the trial court in this case imposed a departure sentence without having an opportunity to adhere to the standard of reasonableness rooted in the *Milbourn* principle of proportionality. Thus, in accordance with *Steanhouse*, remand is necessary so that the trial court may implement the *Crosby* remand procedure as articulated in *Lockridge*. See *Shank*, ___ Mich App at ___; slip op at 3; *Steanhouse*, ___ Mich App at ___; slip op at 25.[4]

## VI. CONCLUSION

Defendant has failed to establish that his claims regarding the rejection of the plea agreement, the preclusion of Jones' testimony, and the alleged judicial bias warrant reversal of his conviction. However, we remand for further proceedings concerning the reasonableness of his departure sentence.

---

[4] The prosecution indicates on appeal that defendant has been released from prison and is now on parole. As such, the prosecution observes that "it is unlikely that [defendant] still wants to be resentenced." Under the *Crosby* remand procedure, defendant will have an opportunity to forgo resentencing by providing the trial court with prompt notice of his intention to do so. If the trial court does not receive such notice in a timely manner, the trial court shall continue with the *Crosby* remand procedure as delineated in *Lockridge* and *Steanhouse*.

We affirm defendant's conviction, but remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Michael J. Riordan
/s/ Michael F. Gadola